2001 UT 55

**KEARNS–TRIBUNE CORPORATION, (Salt Lake Tribune), Plaintiff and Appellee,**

v.

**SALT LAKE COUNTY COMMISSION, (Brent Overson, Mary Callaghan and Randy Horiuchi), Defendant and Appellant.**

No. 991011.

Supreme Court of Utah.

June 29, 2001.

Michael Patrick O'Brien, Deno G. Himonas, Jeremy M. Hoffman, Salt Lake City, Charles A. Brown, Lewiston, Idaho, for plaintiff.

David E. Yocom, Gavin J. Anderson, Salt Lake City, for defendant.

Jeffrey J. Hunt, Diana Hagen, David C. Reymann, Salt Lake City, for amici.

WILKINS, Justice.

¶ 1 This appeal presents the question of whether the Utah Open and Public Meetings Act, Utah Code Ann. §§ 52–4–1 to –10 (1998), permits the Salt Lake County Commission to close a meeting to the public in order to consider, with legal counsel, possible courses of action with respect to an annexation petition pending before the Salt Lake County Boundary Commission. The parties filed cross motions for summary judgment, and the district court ruled in favor of plaintiff Kearns–Tribune Corporation concluding that by closing the meeting, the Salt Lake County Commission violated the Open and Public Meetings Act. We reverse and remand.

## BACKGROUND

¶ 2 In this case, no material differences in the facts were raised by the parties, only questions about the legal implications of those facts. We recite the facts accordingly.

¶ 3 The Salt Lake County Commission ("County Commission") held a staff meeting on March 30, 1998. The County Commission customarily treated staff meetings as subject to the Utah Open and Public Meetings Act, and therefore the March 30, 1998 meeting was open to the public. At one point, however, the county attorney's office suggested to the County Commission that part of the meeting be closed. The county attorney's office wanted to discuss in private whether to oppose Riverton City's petition to annex unincorporated county land that was pending before the Salt Lake County Boundary Commission ("Boundary Commission"). The county commissioners voted unanimously to close the meeting, and the public, including the press, was asked to leave.

¶ 4 The county commissioners and their attorneys then met privately and discussed matters pertaining to Riverton City's annexation proposal. The minutes of this closed meeting reflect that legal counsel first explained to the Commissioners the factual and procedural circumstances surrounding the annexation proceeding and the possible results of the annexation petition, namely that islands of unincorporated county land would result. Next, counsel indicated that South Jordan City had protested Riverton City's petition. Finally, counsel outlined three possible courses of action: (1) the County Commission could send a letter to Riverton City listing technical problems with the petition, but refrain from appearing before the Boundary Commission; (2) the County Commission could appear, through counsel, before the Boundary Commission and address only technical problems with the petition; or (3) the County Commission could file a formal protest with the Boundary Commission

opposing the annexation. Counsel recommended that the county not protest technicalities. The County Commission voted to appear before the Boundary Commission and to send a letter to Riverton City identifying technical problems. The meeting was then reopened to the public, and adjourned.

¶ 5 The complaint filed by plaintiff Kearns–Tribune Corporation ("Kearns–Tribune"), a newspaper publishing company, insists that the Salt Lake County Commission violated the Utah Open and Public Meetings Act (the "Act"), arguing that the exception to the Act permitting closed meetings for "strategy sessions to discuss pending or reasonably imminent litigation," Utah Code Ann. § 52–4–5(1)(a)(iii) (1998), is inapplicable to annexation or boundary protest proceedings. The County Commission answered the complaint and filed a motion for summary judgment, arguing that it appropriately closed the March 30, 1998 meeting to discuss the county's legal alternatives to Riverton City's annexation petition as pending or reasonably imminent litigation. Plaintiff responded by filing a response and a cross-motion for summary judgment.

¶ 6 The district court ruled in favor of Kearns–Tribune, indicating that the portion of the meeting that was closed by the County Commission should have been open to the public. The district court concluded that the County Commission did not conduct a strategy session, but instead discussed the underlying policy issues, which the court stated should be debated publicly. The Salt Lake County Commission appeals.

### STANDARD OF REVIEW

¶ 7 Summary judgment is appropriate only upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); *see also, e.g., Dairy Prod. Servs., Inc. v. City of Wellsville,* 2000 UT 81, ¶ 15, 13 P.3d 581. In reviewing a trial court's decision to grant summary judgment, we give the court's legal decisions no deference, reviewing for correctness. *E.g., Dairy Prod. Servs.,* 2000 UT 81 at ¶ 15, 13 P.3d 581.

### ANALYSIS

¶ 8 This case requires the interpretation and application of the Utah Open and Public Meetings Act. Section 52–4–3 of the Act specifies, "Every meeting is open to the public unless closed pursuant to Sections 52–4–4 and 52–4–5." Section 52–4–4 provides the procedure through which a meeting may be closed. It reads, in relevant part: "No closed meeting is allowed except as to matters exempted under Section 52–4–5...." The provision under consideration in this case, section 52–4–5, sets forth seven purposes for which a meeting may be closed. Four of those purposes or circumstances permitting closure to the public of a meeting involve "strategy sessions," and all four require that a record of the closed proceedings be kept. Utah Code Ann. § 52–4–5(1)(a) (1998).

¶ 9 The types of strategy sessions allowing for lawful closure of an otherwise public meeting include those to discuss "collective bargaining," § 52–4–5(1)(a)(ii), "pending or reasonably imminent litigation," § 52–4–5(1)(a)(iii), "the purchase, exchange, or lease of real property where public discussion ... would disclose the ... value of the property ... or prevent the public body from completing the transaction on the best possible terms," § 52–4–5(1)(a)(iv), and "the sale of real property where public discussion ... would disclose the ... value of the property ... or prevent ... completing the transaction on the best possible terms; the public body had previously given public notice that the property would be offered for sale; and the terms of the sale are publicly disclosed before the public body approves the sale," § 52–4–5(1)(a)(v).

¶ 10 We have not had occasion to review and distinguish the individual categories of closable meetings. The general nature and tone of the seven exceptions in section 52–4–5(1), however, suggest a clear legislative intent to ensure that the public's business is done in full view of the public except in those specific instances where either the public, or a specific individual who is the subject of the meeting, may be significantly disadvantaged by premature public disclosure of sensitive

information. The ultimate consequence of closed discussions about the price of real property, collective bargaining, and a public body's approach to pending or reasonably imminent litigation eventually becomes public. Nevertheless, in each of these limited circumstances, the public's general interest was thought by our legislature to be best served by allowing confidential discussions to precede the actions that would disclose the strategy.

¶ 11 In the case before us, the Salt Lake County Commission relies upon the exception for strategy sessions to discuss pending or reasonably imminent litigation. *See* § 52–4–5(1)(a)(iii). The Commission argues that it properly closed the meeting to the public because it discussed Riverton City's petition before the Boundary Commission, and matters before the Boundary Commission are quasi-judicial and therefore qualify as "litigation" for purposes of the statute. Kearns–Tribune, to the contrary, argues that the Salt Lake County Commission improperly closed the meeting because the topic discussed by the county commissioners, an annexation dispute, is a legislative or policy matter, and not pending or reasonably imminent litigation. The amici, the Society of Professional Journalists and several news organizations, also argue that the County Commission improperly closed the meeting because the county commissioners discussed policy, not litigation strategy. The amici further contend that the litigation exception must be strictly construed. The plain meaning of the term "litigation" implies court proceedings, they argue, and defining "litigation" to include agency proceedings, like an annexation proceeding, would result in the litigation exception eviscerating the general rule of openness intended by the Act.

¶ 12 Both parties and the amici refer us to our decision in *Common Cause of Utah v. Public Service Commission,* 598 P.2d 1312 (Utah 1979). *Common Cause* is not like this case, however. In *Common Cause,* we said that the legislatively-created Utah Public Service Commission performs a variety of duties, including those that fall distinctly within legislative, administrative, and adjudicative categories. *Id.* at 1314. In order to

perform the adjudicative function of hearing and resolving disputes between competing and protesting utilities, the Public Service Commission must be able to deliberate and arrive at decisions in private. *Id.* We therefore concluded that the Public Service Commission's adjudicative function was quasi-judicial, and that as a result the Open and Public Meetings Act did not apply when the Public Service Commission acts in its adjudicative role. *Id.* In concluding that the Public Service Commission's deliberative sessions need not be open to the public, we balanced two competing interests:

> [T]he obviously desirable objective of giving the public, . . . the fullest possible degree of knowledge of the matter under consideration, and of affording the opportunity to supply information and to engage in dialogue and the exchange of ideas[; against the interest that] after all of the evidence and information has been furnished to the Commission, the process of analysis, deliberation, and arriving at a decision, should be permitted to take place in an atmosphere of peace and privacy, . . . so that the commissioners have the opportunity for a frank and unrestricted discussion and exchange of ideas in order that they can arrive at the best possible decision. . . .

*Id.* at 1313–14.

¶ 13 This case, however, is different from *Common Cause* because here we are not presented with the question of whether the Salt Lake County Commission closed the meeting to conduct a quasi-judicial deliberative function, but whether the County Commission's meeting could be closed under the Act to discuss strategy with respect to an entire adversarial process, the process of protesting an annexation petition before the county Boundary Commission. In other words, the question is whether the entire process before a county boundary commission, a process that involves both legislative and judicial aspects, constitutes litigation for purposes of the Open and Public Meetings Act, *from the perspective of the County Commission.* Moreover, we are not balancing interests as we did in *Common Cause.* We are interpreting legislation which, on the one

hand expresses clear legislative intent that the deliberations of state agencies and political subdivisions be conducted openly, against an exception to that mandate that permits meetings to be closed for "strategy sessions to discuss pending or reasonably imminent litigation." § 52–4–5.

## I. INTERPRETATION OF EXCEPTIONS TO THE UTAH OPEN AND PUBLIC MEETINGS ACT

¶ 14 When we interpret statutes, we "give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795 (citing *Evans v. State*, 963 P.2d 177, 184 (Utah 1998)). We therefore look first to the statute's plain language to discover the purpose the legislature intended to achieve in enacting the Act. *Evans*, 963 P.2d at 184 (citing *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995) (" 'The best evidence of the true intent and purpose of the Legislature ... is the plain language of the Act.' " (citation omitted))).

¶ 15 The legislature expressly declared its purpose in enacting the Utah Open and Public Meetings Act in section 52–4–1, which reads, "It is the intent of the law that [the] actions [of the state, its agencies and political subdivisions,] be taken openly and that their deliberations be conducted openly." Utah Code Ann. § 52–4–1 (1998). As a result, we interpret the Utah Open and Public Meetings Act broadly to further the declared statutory purpose of openness. Because we construe the Act broadly, it therefore follows that the exceptions be strictly construed. In this case we construe the litigation exception narrowly so as to give effect to the legislative intent. We further note the intent of the legislature to permit some meetings to be closed under certain circumstances. In carrying out the purpose of openness, the legislature could have chosen to make the open meetings requirement absolute. It chose, however, to exclude some meetings from the openness requirement.

¶ 16 The statutory provision in question permits an otherwise public meeting to be closed by a public body for "strategy sessions to discuss pending or reasonably imminent litigation." Utah Code Ann. § 52–4–5(1)(a)(iii). In order for the Salt Lake County Commission not to have violated the Act by closing the March 30, 1998 meeting, the closed portion of the meeting (1) must have been a strategy session, (2) the strategy session must have been with respect to litigation, and (3) the litigation must have been pending or reasonably imminent.

### A. Whether the Closed Portion of the Meeting was a Strategy Session

¶ 17 The trial court, after reviewing the minutes of the March 30, 1998 meeting in camera, concluded that the County Commission "did not conduct a strategy session, rather it discussed the underlying policy question of whether to take any action at all." The district court stated that in order to close a meeting under section 52–4–5(1)(a)(iii), the focus of the public body's discussion must be on litigation strategy, which could include a discussion of claims or defenses, strengths and weaknesses of the public body's position, whether to hire outside counsel, settlement posture, etc.

¶ 18 We conclude that the closed portion of the meeting was a strategy session. In generally accepted terms, to strategize means to devise plans or means to achieve an end. The Salt Lake County Commission devised a plan or course of action and put it in motion during the private portion of the March 30, 1998 meeting. It is uncontested that counsel for the County Commission explained the factual and procedural circumstances leading to, and the possible results of, Riverton City's annexation petition. Next, counsel informed the County Commission that South Jordan City had already protested Riverton City's petition and offered three possible courses of action for the County Commission to take with respect to the petition: (1) send a letter to Riverton City listing technical problems with the petition, but refrain from appearing before the Boundary Commission; (2) appear, through counsel, before the Boundary Commission and address only technical problems with the petition; or (3) file a formal protest opposing the annexation. Moreover, counsel also suggested that one

option regarding the protest of technicalities not be pursued; and at the end of the private session, the County Commission selected a course of action, agreeing to appear before the Boundary Commission and to send a letter to Riverton City identifying technical problems. This closed session during which the County Commission was informed of the background of the Riverton City annexation petition, was advised on how to respond to the petition, was given a recommended course of action, and decided on a course of action, constitutes a strategy session.

### B. Whether Disputes Before the Boundary Commission Constitute Litigation

■ ¶ 19 Having concluded the closed portion of the meeting was a strategy session, the question becomes whether the meeting was a discussion of *litigation* strategy, or whether it was strategy with respect to a non-litigation process. Essentially, we must decide whether an annexation matter before the Boundary Commission is litigation.

¶ 20 The County Commission reasons that county boundary commission proceedings are pending or reasonably imminent litigation because annexation proceedings before a boundary commission include adverse parties, representation, notice, witnesses, evidence, exhibits, transcripts, appeals to the district court, etc., and are therefore quasi-judicial proceedings that qualify as litigation. Kearns–Tribune, on the other hand, argues that boundary commission proceedings are legislative proceedings, not litigation. The amici also assert that annexation proceedings are not litigation. They say that the plain meaning of the term "litigation" implies court proceedings, and defining "litigation" to include agency proceedings would result in the litigation exception swallowing the general rule of openness intended by the Open and Public Meetings Act. Furthermore, the amici cite *Bradshaw v. Beaver City*, 27 Utah 2d 135, 493 P.2d 643 (Utah 1972), and *Child v. City of Spanish Fork*, 538 P.2d 184 (Utah 1975), for the proposition that annexation proceedings are legislative functions and are therefore not litigation. They argue that even though boundary commission proceedings may be similar to litigation procedurally,

the substance of boundary commission decisions is a matter of public policy that should be debated publicly.

■ ¶ 21 This court has clearly indicated that the determination of municipal boundaries is a legislative function, *see Sweetwater Props. v. Town of Alta*, 622 P.2d 1178, 1180 (Utah 1981); *Freeman v. Centerville City*, 600 P.2d 1003, 1005 (Utah 1979); *Child*, 538 P.2d at 186; *Bradshaw*, 27 Utah 2d at 137, 493 P.2d at 645, and we do not depart from this conclusion. More accurately, the determination of municipal boundaries is a function of the state legislature, as opposed to a local legislative body. This is because local governmental bodies, as political subdivisions of the state, have no inherent control over their own boundaries as they derive their powers from the State. *See, e.g., Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 607–08, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (stating that it is well settled that local governmental units are created as agencies for exercising the State's governmental powers and that the governmental powers that may be entrusted to local governments are granted in the absolute discretion of the State); *see also 1 Antieau on Local Government Law* § 3.01 (2d ed.2000). Accordingly, we maintain that the determination of municipal boundaries, including land annexation, is a legislative function within the control of the state legislature.

¶ 22 Our legislature has delegated, to a certain extent, this authority over annexation and has enacted a statutory system that controls the annexation process. *See* Utah Code Ann. § 10–2–401 to –426 (1999 & Supp.2000). Because of this statutory scheme, local governments in our state are authorized to annex land, provided they follow the statutory guidelines. Moreover, as part of the statutory framework, the legislature also created a mechanism for the resolution of annexation disputes. This method of dispute resolution involves county boundary commissions.

¶ 23 The process of annexing an unincorporated area to a municipality generally begins with the filing of an annexation petition. *Compare* Utah Code Ann. § 10–2–402(2) (1999) ("Except as provided in Section 10–2–418, a municipality may not annex an unin-

corporated area unless a petition under Section 10–2–403 is filed requesting annexation"), *and* Utah Code Ann. § 10–2–403(1) (1999) ("Except as provided in Section 10–2–418, the process to annex an unincorporated area to a municipality is initiated by a petition as provided in this section"), *with* Utah Code Ann. § 10–2–418 (1999) (explaining how, notwithstanding subsection 10–2–402(2), a municipality may annex an area without an annexation petition if, for example, the area to be annexed consists of islands within or peninsulas contiguous to the municipality). The annexation petition is filed with the city recorder or town clerk of the proposed annexing municipality. § 10–2–403(2)(a). The legislative body of the proposed annexing municipality may either deny or accept the petition. § 10–2–405(1)(a). If the legislative body of the proposed municipality accepts the petition, the city recorder or town clerk for that municipality then determines if the petition is valid by deciding whether the petition meets the necessary requirements of subsections 10–2–403(2), (3), and (4). § 10–2–405(2)(a). If the petition passes muster, the city recorder or town clerk then certifies the petition and provides written notice of the certification to various persons and entities, including the county legislative body. § 10–2–405(2)(b)(i).

¶ 24 The legislative annexation scheme then permits the county legislative body to oppose an annexation petition by filing a protest to the petition, Utah Code Ann. § 10–2–407(1)(a)(i) (Supp.2000), thereby creating an adversarial process. The protest is filed with either the county boundary commission, § 10–2–407(2)(a)(i)(B)(I), or with the clerk of the county in which the area proposed for annexation is located if the county has not yet created a boundary commission, § 10–2–407(2)(a)(i)(B)(II). Regardless of with whom the protest is filed, an existing boundary commission must review the annexation petition and protest, or one must be formed to do so. *See* Utah Code Ann. § 10–2–409 (1999) (explaining that at the time a protest is filed, a boundary commission may already exist because a county legislative

body may create a boundary commission at any time, and that if a boundary commission does not exist at the time a protest is filed under section 10–2–407, the county legislative body must form a boundary commission within thirty days of the filing of the protest). In other words, the legislature provided that where an annexation petition is protested, each county must create, at some point, a boundary commission to resolve the dispute.

¶ 25 Once created, the role of a county boundary commission is to "hear and decide, according to the provisions of this part,[1] each protest filed under Section 10–2–407, with respect to any area within that county." § 10–2–412. In essence the boundary commission is required to apply the rules promulgated by the legislature regarding annexation to factual circumstances before it. The boundary commission is instructed to issue a written decision on the proposed annexation. § 10–2–416(2). In this sense, the mandate to resolve disputes between adverse parties by applying rules of law to a particular set of facts is judicial in nature, meaning the boundary commission performs a judicial function.

¶ 26 However, in performing its role of deciding protests, the boundary commission generally retains a "feasibility consultant" to conduct a "feasibility study," *see* § 10–2–413, and then holds a public hearing, *see* § 10–2–415. A feasibility consultant is required to analyze and report on different factors pertaining to the area proposed for annexation including, among other things, population and population density, natural boundaries, current and five-year projections of demographics and economic base, projected growth over the next five years, projected revenues and costs of governmental services for the next five years, cultural and social aspects of the surrounding area, and the potential effect on school districts. § 10–2–413(3)(a). At the hearing, the feasibility consultant presents the results of the feasibility study, and the boundary commission takes public comment. As such, the boundary commission considers whether a proposed

---

1. Part 4 of title 10, chapter 2, of the Utah Code includes sections 401 to 426, the statutory provisions pertaining to annexation.

annexation is good policy. In this sense, the boundary commission acts in a legislative capacity. In sum, the boundary commission functions as both a legislative body and an adjudicative body.

¶ 27 Nevertheless, the role of a county boundary commission is, on the whole, essentially one of resolving disputes between competing parties, the petitioner and the protesting party. Thus, even though the boundary commission engages a consultant to gather information and present recommendations on matters of policy, the county boundary commission is mandated by the legislature to apply the law to the facts and information presented to it by the feasibility consultant, petitioner, and protester. *See* §§ 10–2–402, 403. For these reasons, we conclude that boundary commissions act as quasi-judicial bodies when considering annexation petitions and protests.

¶ 28 In addition, we are further persuaded that the process of considering annexation petitions and protests is litigation. First, decisions of a county boundary commission are subject to judicial review. "Review of a boundary commission decision may be sought in the district court...." § 10–2–417(1). Even though the district court reviews the decision of the boundary commission under an arbitrary and capricious standard, *see* § 10–2–417(2) & (3), the district court is authorized to review whether the decision of the commission was contrary to the annexation laws set forth by the state legislature.

¶ 29 Plaintiff Kearns–Tribune also acknowledged before the district court that "a proceeding before a tribunal like the Utah State Tax Commission would qualify as 'litigation' for the purposes of the litigation exception." Plaintiff argued before the district court, however, that proceedings before the Tax Commission were different from proceedings before the Salt Lake County Boundary Commission because, according to plaintiff, the Boundary Commission lacked rules of procedure like the Tax Commission. We are persuaded, however, that county boundary commission proceedings are analogous to contested proceedings before the State Tax Commission[2] and constitute litigation under the litigation exception to the Open and Public Meetings Act. The Salt Lake County Boundary Commission conducts its proceedings pursuant to rules of procedure and the proceedings before the Boundary Commission bear all of the necessary accouterments of litigation.

¶ 30 We conclude that while county boundary commissions perform both legislative and adjudicative functions, the method of resolving annexation disputes through county boundary commissions is quasi-judicial, and it constitutes litigation for purposes of the Utah Public and Open Meetings Act.

## C. Whether the Dispute before the Boundary Commission was Pending or Reasonably Imminent

¶ 31 In the instant case, it is undisputed that the annexation proceeding discussed by the County Commission was already pending before the Boundary Commission. As a result, the County Commission did not violate the Open and Public Meetings Act by closing the March 30, 1998 meeting to discuss whether to protest Riverton City's annexation petition before the Salt Lake County Boundary Commission. As a matter of law, the closed portion of the meeting constituted a strategy session to discuss pending or reasonably imminent litigation.

## II. PLAINTIFF'S ALLEGATION THAT THIS CASE IS MOOT AND A DECISION WOULD CONSTITUTE AN ADVISORY OPINION

¶ 32 Kearns–Tribune also argues that because the minutes of the closed portion of the meeting have already been voluntarily released and made public, this case is now moot, and if this court were to issue an opinion, to do so would be to issue an advisory opinion. We disagree.

---

**2.** We have previously indicated that the Tax Commission is a quasi-judicial body, *Salt Lake County v. Tax Comm'n*, 532 P.2d 680, 682 (Utah 1975), that is also subject to judicial review, *see*

Utah Code Ann. §§ 59–1–601 to –610 (outlining the method of judicial review of tax commission decisions).

¶ 33 We have previously declared that the law permits a court to decide an issue that, although technically moot, is of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review. *See Ellis v. Swensen*, 2000 UT 101, ¶¶ 25–26, 16 P.3d 1233 (explaining the public interest exception to the mootness doctrine); *Wickham v. Fisher*, 629 P.2d 896, 899–900 (Utah 1981); *see also KUTV, Inc. v. Conder*, 668 P.2d 513, 516–17 (Utah 1983). The issue before us, the interpretation of the litigation exception to the Utah Open and Public Meetings Act, is of considerable public interest, could very well recur in a similar manner, and, because of the nature of the dispute, could otherwise escape judicial review.

## III. ATTORNEY FEES

¶ 34 The trial court awarded attorney fees to plaintiff Kearns–Tribune as the prevailing party pursuant to section 52–4–9(2) of the Utah Code, but stayed payment pending resolution of this appeal. Inasmuch as the trial court's judgment is herein reversed, plaintiff is no longer a "successful plaintiff" as required by section 52–4–9 of the Utah Code. Therefore, the judgment awarding attorney fees to plaintiff is vacated.

## CONCLUSION

¶ 35 The district court erred in concluding that the Salt Lake County Commission violated the Utah Open and Public Meetings Act when it closed part of the March 30, 1998 meeting to discuss how to address an annexation petition filed by Riverton City with the Boundary Commission. The Act permits closed meetings for "strategy sessions to discuss pending or reasonably imminent litigation," § 52–4–5(1)(a)(iii), and the County Commission conducted a strategy session in which it discussed courses of action to take regarding Riverton City's annexation petition then pending before the Salt Lake County Boundary Commission, proceedings that constitute litigation under the Act.

¶ 36 Accordingly, the trial court's order granting plaintiff's motion for summary judg-

ment is reversed, and the award of attorney fees to plaintiff is vacated.

¶ 37 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Judge TAYLOR concur in Justice WILKINS' opinion.

¶ 38 Having disqualified himself, Justice DURRANT does not participate herein; District Judge TAYLOR sat.