2002 UT 60

**DAVIS COUNTY SOLID WASTE MANAGEMENT and Energy Recovery Special Service District, Plaintiff and Appellee,**

v.

**CITY OF BOUNTIFUL, Defendant and Appellant.**

No. 20010318.

Supreme Court of Utah.

July 2, 2002.

Russell L. Mahan, John C. Ynchausti, Bountiful, for defendant.

Larry S. Jenkins, Sheri A. Mower, Salt Lake City, for plaintiff.

WILKINS, Justice:

¶ 1 This appeal requires us to interpret a section of the Utah Code that has since been superseded, Utah Code Ann. § 10–2–415 (1986). Specifically, we must determine whether, under the statute, annexation occurred (1) when an annexation resolution was passed, or (2) when the resolution and plat were filed with the county recorder's office. The district court concluded that the statute provided for annexation upon filing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The facts are undisputed. Bountiful City passed an annexation resolution on August 29, 1984, annexing an area of land in Davis County. However, the annexation resolution and an accompanying boundary description were not filed with the Davis County Recorder until November 9, 1984. Before the resolution and boundary description were filed, the Davis County Solid Waste Management and Energy Recovery Service District ("Service District"), a special service district under Utah law, see Utah Code Ann. § 11–23–1 to –30 (1986), was created by the Davis County Commission on September 24, 1984. The Service District was created to provide waste management services in Davis County, specifically to households in unincorporated areas and households in municipalities that wished to be part of the special service district. Bountiful City opted not to be part of the Service District.

¶ 3 Pursuant to state law, the Service District is entitled to impose and collect a usage fee for the services or facilities it provides. Utah Code Ann. § 11–23–19 (1986) (amended 1988, 1990, and 2001, and renumbered as § 17A–2–1320). The Service District adopted, by resolution, a monthly household usage fee for those households serviced within the district. This fee took effect on July 1, 1995. The resolution was later amended on April 3, 1996, and further changes became effective on July 1, 1996, to include the imposition of a commercial use fee, also by resolu-

tion. Following a 1997 audit, the Service District concluded that Bountiful City had not remunerated it for fees to which the Service District considered itself entitled. The Service District made verbal and written demands for fees allegedly accrued since July 1, 1995, but Bountiful City refused to pay.

¶ 4 Consequently, the Service District sued Bountiful City seeking, among other things, a declaratory judgment that the geographical area in question was, and still is, actually part of the Service District, and not exclusively part of Bountiful City. The Service District insists that annexation of the territory did not occur when the resolution was passed because annexation could not have occurred until the annexation resolution and boundary description were filed with the county recorder. As a result, according to the Service District, because the Service District was created before the annexation resolution was filed on November 9, 1984, the territory was, and still is, part of the Service District.

¶ 5 Both parties moved for partial summary judgment. The district court granted partial summary judgment in favor of the Service District, concluding that, pursuant to section 10–4–415, annexation could not have occurred until the appropriate documents were filed with the county recorder, and therefore the disputed area became part of the Service District as of September 24, 1984. Eventually, the parties entered into a settlement agreement, settling some issues in dispute, but leaving open Bountiful City's right to appeal the district court's decision regarding when the disputed territory was annexed. Bountiful City appeals this ruling.

## ISSUE PRESENTED

¶ 6 The only issue on appeal is whether, in granting summary judgment, the district court correctly interpreted section 10–2–415 as it read in 1984 when the annexation resolution was passed and later recorded. The statute in question, Utah Code Ann. § 10–2–415 (1986), was enacted in 1979, see 1979 Utah Laws ch. 25 § 16, and amended in 1983,

*see* 1983 Utah Laws ch. 69 § 1. It read as follows in 1984:

> If: (1) an annexation proposed in the policy declaration, in the judgment of the municipality, meets the standards set forth in this chapter; and (2) no protest has been filed by written application by an affected entity within five days following the public hearing, the members of the governing body may by two-thirds vote adopt a resolution or ordinance of annexation in accordance with the terms of the policy declaration adopted by the governing body, and the territory shall then and there be annexed. If an annexation proposed in the policy declaration has been protested within the allowable time by application to the local boundary commission, the governing body is subject to the decisions of that commission unless overturned by an appeal to the district court. After receiving notification of approval of the proposed action from the commission or after complying with the terms of a conditional approval, the governing body may by two-thirds vote adopt a resolution or ordinance of annexation. If the territory is annexed, a copy of the duly certified transparent reproducible plat or map shall at once be filed in the office of the county recorder, together with a certified copy of the resolution or ordinance declaring the annexation. On filing the maps or plats, the annexation shall be deemed and held to be part of the annexing municipality, and the inhabitants thereof shall enjoy the privileges of the annexing municipality.

Utah Code Ann. § 10–2–415 (1986).

¶ 7 Bountiful City argues annexation of the geographical area in question occurred on August 29, 1984, when the city adopted the annexation resolution. Therefore, they reason, when the Service District was created on September 24, 1984, the Service District did not include the disputed territory because that area was already part of Bountiful City, having been annexed on August 29. Bountiful City contends that under the plain language of the statute, the territory was "then and there" annexed when the Bountiful City Council passed the annexation resolution, which Bountiful City deems the determina-

tive legislative act. The recording of the annexation plat, according to the city, was merely a ministerial step. Bountiful City also insists that the court should attempt to harmonize the apparent contradictory language in the statute, but that if the statute cannot be harmonized, the annexation resolution must be given primacy over the ministerial act of recording.

¶ 8 The Service District claims that the statute required the annexation resolution, together with the required plat, to be filed for annexation to be complete. Therefore, according to the Service District, the unincorporated territory, including the disputed territory, became part of the Service District on September 24, 1984, because the district was created before the resolution and plat were filed with the Davis County Recorder on November 9, 1984. The Service District insists that under the plain language of the statute, annexation could not have occurred until the resolution and plat were filed. The Service District further contends that Utah case law supports its position, to which Bountiful City counters that the case law relied upon by the Service District is inapposite because it deals with statutes in effect before the statute at issue was enacted.

## STANDARD OF REVIEW

■■■■ ¶ 9 We review the district court's grant of summary judgment for correctness. Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *see also, e.g., Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 7, 28 P.3d 686. In reviewing a grant of summary judgment, we give the court's legal decisions no deference, reviewing for correctness. *Kearns–Tribune Corp.,* 2001 UT 55 at ¶ 7, 28 P.3d 686. Specifically, a district court's interpretation of a statutory provision is a question of law that we review for correctness. *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County,* 2002 UT 8, ¶ 8, 44 P.3d 680.

## ANALYSIS

¶ 10 When we interpret statutes, our primary goal is to give effect to the legislature's intent. *E.g., Day v. Meek,* 1999 UT 28, ¶ 6, 976 P.2d 1202. To determine the legislature's intent, we look first to the statute's plain language. *Id.* We analyze the language of a statutory provision in light of other provisions within the same statute or act, and we attempt to harmonize the provisions in accordance with the legislative intent so as to give meaning to each provision. *See id.* One could claim that the interpretations argued by both Bountiful City and the Service District are reasonable, and therefore the statute is ambiguous. However, in considering the structure of this statute, and in order to give effect to each of the three sections of the statute as explained below, we conclude that only one interpretation, that annexation occurs upon filing, is reasonable.

¶ 11 Given the structure of the statute, we conclude that the legislature required a two-step annexation process. The first step of the process found in section 10–2–415 specifies two alternate procedures imposed on the governing bodies of municipalities that must be followed to adopt an annexation resolution or ordinance. This first step differs depending on whether the annexation is protested. Second, regardless of whether or not the annexation was protested, the statute requires the resolution or ordinance declaring the annexation to be filed, together with the required plats or maps. Clearly the legislature intended filing to occur regardless of whether the annexation was protested.

¶ 12 Thus, our reading divides the statute into the following three sections:

[I.] If: (1) an annexation proposed in the policy declaration, in the judgment of the municipality, meets the standards set forth in this chapter; and (2) no protest has been filed by written application by an affected entity within five days following the public hearing, the members of the governing body may by two-thirds vote adopt a resolution or ordinance of annexation in accordance with the terms of the policy declaration adopted by the governing body, and the territory shall then and there be annexed.

[II.] If an annexation proposed in the policy declaration has been protested within the allowable time by application to the local boundary commission, the governing body is subject to the decisions of that commission unless overturned by an appeal to the district court. After receiving notification of approval of the proposed action from the commission or after complying with the terms of a conditional approval, the governing body may by two-thirds vote adopt a resolution or ordinance of annexation.

[III.] If the territory is annexed, a copy of the duly certified transparent reproducible plat or map shall at once be filed in the office of the county recorder, together with a certified copy of the resolution or ordinance declaring the annexation. On filing the maps or plats, the annexation shall be deemed and held to be part of the annexing municipality, and the inhabitants thereof shall enjoy the privileges of the annexing municipality.

Utah Code Ann. § 10–2–415 (1986). In order to give effect to the third section, the filing section, the statute must be construed so that annexation occurs upon filing. To construe the statute otherwise, so that annexation occurs upon passage of the annexation resolution or ordinance, would render the filing requirement virtually meaningless.

¶ 13 First, the statutory language mandates immediate filing and indicates that filing is necessary before the annexation process is complete. Under the statute, the first step of annexation occurs upon adoption of a resolution or ordinance of annexation. If annexation is not protested, a two-thirds vote from the local governing body is necessary to adopt an annexation resolution. Likewise, even if annexation is protested and a boundary commission must approve the annexation, the local governing body must still resolve to annex by a two-thirds vote. Therefore, regardless of whether a proposed annexation was protested, in order for a geographical area to be annexed, the local governing body must, by two-thirds vote, adopt a resolution or ordinance of annexation.

¶ 14 Then, once the local governing body—and the boundary commission, if necessary—has approved the annexation, the second step of annexation requires filing with the county recorder. The language explicitly requires that "a copy of the duly certified transparent reproducible plat or map *shall at once be filed* in the office of the county recorder, together with a certified copy of the resolution or ordinance declaring the annexation." § 10–2–415 (1986) (emphasis added). The legislature mandated that the resolution and plats or maps be filed immediately following the passage of the resolution.

¶ 15 Second, specific statutory language states that filing is necessary before the "privileges" of annexation can be enjoyed, and further language states that annexation "shall be deemed and held to be part of the annexing municipality" only after filing. § 10–2–415 (1986). Under the statute, whatever privileges or benefits were to be had from annexation could not be taken advantage of until filing. Indeed, the statutory language indicates that "the inhabitants [of the annexation] shall enjoy the privileges of the annexing municipality [upon filing]." § 10–2–415 (1986). The plain language also indicates that not until "filing [of] the maps or plats [shall] the annexation . . . be deemed and held to be part of the annexing municipality." § 10–2–415 (1986). These two clauses, suggesting that the annexed area was not "deemed and held to [have been] part of the annexing municipality," and that privileges of the annexation were not to be enjoyed until filing occurred, persuade us that the legislature did not intend annexation to be final until filing.

¶ 16 Third, interpreting the statute so that annexation occurs upon filing gives effect to the concept of public notice. The statute encourages immediate filing in order to place the public on notice that the territory had been annexed under the statutory scheme. Thus, Bountiful City had to file the resolution and the required plats or maps in order for the public to be on notice that the area in dispute had been incorporated into Bountiful City. If we were to interpret the statute so that annexation occurred upon passage of the resolution, the public would be unaware that the land had been annexed until the proper documents were filed, unless they were present at the meeting. Interpreting the statute to make annexation effective upon filing gives effect to this notion of public notice.

¶ 17 Bountiful City argues that to interpret the statute so that annexation occurs upon filing does not give effect to the clause in the first section that "the territory shall then and there be annexed" upon passage of an annexation resolution by the governing body. However, we interpret this "then and there" language to mean that annexation, as it pertains to the governing body, has occurred upon passage of an annexation resolution or ordinance, but annexation as it pertains to the public has not. In other words, as applied to the governing body that passed the annexation resolution, the territory is then and there annexed; but as to the public, the territory is not yet annexed until filing. The property is annexed as to the governing body because the governing body is then required to continue to follow the annexation statute and file the resolution or ordinance with the required plats or maps. Thus, in order to disconnect a territory from a municipality, the statutory process must be followed. *See* Utah Code Ann. §§ 10–2–501 to –509 (1986) (setting forth the process by which territory within a municipality could be disconnected from the municipality). The governing body cannot simply fail to file the required documents to then prevent annexation. Thus, as to the governing body, the territory is "then and there" annexed upon passage of the annexation resolution, and the annexation is binding upon it. The annexation is not binding on the public, however, until the required documents are filed, thereby placing the public on notice of the annexation.

¶ 18 This holding, that annexation occurred upon filing, is consistent with other parts of chapter 2, title 10 of the Utah Code in effect in 1984 that also required filing before incorporation, disconnection, and consolidation of municipalities—actions that also impact municipal boundaries—were deemed complete. *See* Utah Code Ann. § 10–2–109 (1986) (explaining that towns containing more than 100 but less than 800 people may incorporate by filing a petition with the

board of county commissioners, and requiring that the petition include the "legal description and the boundaries of the territory" and be filed with the county recorder before the incorporation "shall be complete"); Utah Code Ann. § 10–2–508 (1986) ("On filing of the articles of amendment required by § 10–2–507 with the county recorder and lieutenant governor, disconnection shall be complete."); Utah Code Ann. § 10–2–611 (1986) ("On filing the articles of consolidation with the lieutenant governor, the incorporation of the new municipality shall be complete and the original municipalities involved in the consolidation shall be deemed to be disincorporated.").

¶ 19 Finally, Bountiful City claims that annexation should occur upon passage of the annexation resolution because passage of the annexation resolution was the determinative legislative act and filing is merely a ministerial function. We disagree with this reasoning. The determination of municipal boundaries is indeed a legislative function. "More accurately, [however,] the determination of municipal boundaries is a function of the state legislature, as opposed to a local legislative body." *Kearns–Tribune Corp.,* 2001 UT 55 at ¶ 21, 28 P.3d 686. "This is because local governmental bodies, as political subdivisions of the state, have no inherent control over their own boundaries as they derive their powers from the State." *Id.* (citations omitted). Thus, it is not the alleged municipal legislative act that is determinative. Rather, when the state legislature enacted the statutory framework that controlled the annexation process in 1984, the legislature delegated, to a certain extent, the authority over annexation, *see, e.g., Sandy City v. City of South Jordan,* 652 P.2d 1316, 1318–19 (Utah 1982), and it is the interpretation of the statute delegating the annexation process to local municipalities that controls this case.

## CONCLUSION

¶ 20 The district court was correct to conclude that under the statute, Utah Code Ann. § 10–2–415 (1986), annexation occurred upon filing. The decision of the district court is affirmed.

¶ 21 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice RUSSON concur in Justice WILKINS' opinion.