2002 UT 69

Blake William WADDOUPS, and James Edward Sparrow, Jr., Plaintiffs and Appellants,

v.

The AMALGAMATED SUGAR COMPANY, a Utah corporation, et al., Defendants and Appellees.

No. 20000776.

Supreme Court of Utah.

July 23, 2002.

Rehearing Denied Aug. 29, 2002.

Trent J. Waddoups, Salt Lake City, for plaintiffs.

W. Mark Gavre, Salt Lake City, for defendants.

WILKINS, Justice:

¶ 1 Plaintiffs appeal two district court orders: an order granting summary judgment on plaintiffs' initial complaint and an order

granting a motion to dismiss plaintiffs' amended complaint. We affirm both orders.

## FACTUAL AND PROCEDURAL CONTEXT

### I. FACTUAL BACKGROUND

¶ 2 Defendant Amalgamated Sugar Company ("Amalgamated") operates a sugar processing plant near Twin Falls, Idaho. Amalgamated is headquartered in Ogden, Utah. Plaintiffs Blake Waddoups and James Sparrow worked at the Twin Falls plant as "bulk loaders," operating the system that loaded sugar into rail cars. Waddoups was hired in 1985, and Sparrow was hired in 1989. While plaintiffs were employed with Amalgamated, another employee, Michael Davis, died as a result of an accident at the Twin Falls plant. On February 16, 1995, Davis's arm was caught in the bulk-loading system's conveyor belt and was torn from his body, causing him to bleed to death.

¶ 3 During the accident, blood and flesh from Davis's arm contaminated the sugar present in the system. Plaintiffs insist contaminated sugar mixed with uncontaminated sugar when contaminated sugar moved through the production system and mixed with the sugar in Amalgamated's storage silos. Plaintiffs base this contention on their involvement in the cleanup process, and they state that they informed Amalgamated of this problem.

¶ 4 Following the February 16 accident, Waddoups placed "Quarantined" signs on both rail cars that contained the contaminated sugar. One week later, on February 23, Amalgamated officials told employees that the contaminated sugar would be destroyed. Around this time, Waddoups, accompanied by Sparrow, informed Amalgamated that he thought the sugar stored in the silos was also contaminated. Amalgamated claims the contaminated sugar loaded on the day of the accident was shipped to an animal feed producer; plaintiffs allege Amalgamated shipped contaminated sugar for human consumption, a criminal violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–397 (2002). *See* 21 U.S.C. §§ 331, 333, 342 (2002).

¶ 5 In March 1995, plaintiffs informed Amalgamated of their fear of being implicated in criminal sales of contaminated sugar by virtue of their approval of sugar shipments. They told Amalgamated that they did not want to sign documentation that accompanied shipments of sugar until Amalgamated investigated the extent of the contamination. Amalgamated allegedly threatened plaintiffs with termination.

¶ 6 In May 1995, plaintiffs reported to Amalgamated that they believed the rail cars that delivered the contaminated sugar had not been adequately cleaned upon return to the factory, thereby contaminating other sugar. On May 18, Waddoups threatened to reveal his knowledge to food safety agencies or the media. Waddoups was suspended for two days and warned to stop discussing the matter. Sparrow was fired on May 22, 1995, and Waddoups was fired on May 28, 1995.

¶ 7 Sparrow and Waddoups were members of The American Federation of Grain Millers Union ("the Union"). The Union and Amalgamated had entered into a collective bargaining agreement. Under the collective bargaining agreement employees could be fired only for "just cause," and any discharged employee could file a grievance which could lead to binding arbitration. Plaintiffs argue, in essence, that they were fired for threatening to "blow the whistle" on Amalgamated for selling contaminated sugar. Amalgamated insists plaintiffs were fired for excessive absenteeism, which plaintiffs claim is pretextual.

### II. PROCEDURAL HISTORY

¶ 8 Neither Waddoups nor Sparrow filed a grievance with the Union as provided for in the collective bargaining agreement. Instead, proceeding pro se, they filed a complaint in the second judicial district court in Ogden, Utah. Plaintiffs' initial complaint pled the following, requesting compensatory and punitive damages: (1) wrongful termination of employment in violation of public policy; (2) negligent or intentional infliction of emotional distress; (3) negligent or intentional interference with a prospective economic ad-

vantage; and (4) conspiracy.[1] Amalgamated moved for summary judgment. Plaintiffs opposed the motion, disputing defendant's factual contentions and legal conclusions. The trial court granted summary judgment in favor of Amalgamated. The trial court determined that (1) the plaintiffs' claims were governed by Idaho, not Utah, law; (2) the claim for wrongful discharge in violation of Utah public policy failed to state a claim under Idaho law; (3) the claim for intentional and/or negligent infliction of emotional distress was preempted by the Labor Management Relations Act, specifically 29 U.S.C. § 185(a); (4) the claim for interference with a prospective economic advantage was not supported by evidence of defendant interfering with any actual or potential contractual, employment, or other relationship; and (5) the conspiracy claim lacked evidentiary support. However, the court granted plaintiffs "leave to file an amended complaint asserting a claim under Idaho law for wrongful discharge in violation of Idaho public policy."

¶ 9 Plaintiffs filed a notice of appeal of this order, and the district court issued an order certifying the matter under rule 54(b) of the Utah Rules of Civil Procedure. The appeal was summarily dismissed by this court, however, without prejudice, because the district court's order was uncertifiable based on *Kennecott Corp. v. Utah State Tax Commission*, 814 P.2d 1099 (Utah 1991). We further declined to treat plaintiff's appeal of the nonfinal order as a petition to appeal from an interlocutory order under rule 5(a) of the Utah Rules of Appellate Procedure. *See id.* at 1102.

¶ 10 Despite the fact that the district court granted plaintiffs leave only to plead a cause of action for wrongful discharge in violation of Idaho public policy, plaintiffs' amended complaint alleged the following claims: (1) wrongful termination of employment in violation of Utah and Idaho public policy; (2) negligent or intentional infliction of emotional distress; (3) negligent or intentional interference with a prospective economic advantage; (4) conspiracy; and (5) compensatory and punitive damages.[2] Amalgamated moved to dismiss. The trial court dismissed plaintiffs' amended complaint for three reasons: (1) Idaho law recognizes wrongful discharge in violation of public policy only for at-will employees, and plaintiffs' employment was covered by a collective bargaining agreement; (2) plaintiffs never reported Amalgamated's alleged wrongdoing to a public authority and thus could not make a whistleblower wrongful discharge claim under Idaho law; and (3) plaintiffs' claim was preempted by the Labor Management Relations Act, 29 U.S.C. §§ 141–187 (2002), specifically 29 U.S.C. § 185(a).

¶ 11 Plaintiffs then filed a motion for a new trial or to alter or amend judgment. The trial court denied the motion and dismissed plaintiff's amended complaint. This appeal followed. Plaintiffs argue the trial court erred (1) in granting defendant's motion for summary judgment on plaintiffs' initial complaint, in which the district court granted plaintiffs leave to file an amended complaint, and (2) in granting defendant's motion to dismiss plaintiffs' amended complaint.

## ANALYSIS

### I. SUMMARY JUDGMENT

#### A. *Choice of Law*

¶ 12 We must first consider whether Idaho or Utah law applies.[3] Once we determine whether Utah or Idaho law applies, we can determine whether the trial

---

1. Plaintiffs also pled a fifth cause of action entitled, "Against Defendant for Punitive Damages," but because punitive damages are a remedy and not an independent cause of action, we do not analyze it as a separate cause of action.

2. Plaintiffs again pled a fifth cause of action entitled, "Against Defendant for Punitive Damages," but because punitive damages cannot be pled as an independent cause of action, we do not analyze it as a separate cause of action.

3. Notably, there is a difference between Utah law and Idaho law regarding the claim of wrongful termination of employment in violation of public policy. Under Idaho law, wrongful termination in violation of public policy is a contract-based cause of action, *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981, 987 (1996), and under Utah law, the same claim is a tort-based cause of action, *Peterson v. Browning*, 832 P.2d 1280, 1284–85 (Utah 1992).

court erred in concluding that plaintiffs' claims were preempted by federal labor law. Whether a state law claim is properly dismissed as preempted by federal law is a conclusion of law that we review de novo. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1206 (10th Cir.2001); *see also Walker v. Union Pac. R.R. Co.*, 844 P.2d 335, 340 (Utah Ct.App.1992) ("The lower court's preemption determination is a legal conclusion which we review for correctness, according it no particular deference.").

¶ 13 Plaintiffs allege that Utah law applies because, among other things, their alleged injuries—the main injury being the wrongful discharge claim in violation of Utah public policy—occurred in Utah. Amalgamated, to the contrary, insists that Idaho law governs plaintiffs' claims under the test adopted by Utah, Restatement (Second) Conflict of Laws § 145 (1971).

¶ 14 "Since Utah is the forum state, Utah's choice of law rules determine the outcome of the conflict." *Shaw v. Layton Constr. Co., Inc.*, 872 P.2d 1059, 1063 (Utah Ct.App.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In Utah we apply the "most significant relationship" approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance. *See Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1996) (holding "that the most significant relationship test as explained in Restatement of Conflict section 188 is the appropriate rule for Utah courts to apply to a conflict of laws question in a contract dispute"); *see also Records v. Briggs*, 887 P.2d 864, 867–68 (Utah Ct.App.1994) (explaining that this court has adopted the "most significant relationship" test over the previously used *lex loci* approach for torts and likely intended to apply the approach for other types of claims, and identifying federal cases that concluded we "would apply the 'most significant relationship' test in contract matters as well as tort matters").

1. Characterization of the Actions

¶ 15 To apply the "most significant relationship" approach, we first characterize the nature of the claim. We determine at the outset whether the problem presented relates to torts, contracts, property, or some other field, in order to identify an appropriate set of factors to determine which forum has the "most significant relationship" to the cause of action. *See* 16 Am.Jur.2d Conflict of Laws § 3 (1998), *quoted in Records*, 887 P.2d at 868 n. 8. This is essential because the particular factors considered in determining the "most significant relationship" vary according to the type of action brought. *See Records*, 887 P.2d at 868 n. 8. One set of factors will often be more applicable than another set depending on the area of law implicated.

¶ 16 Plaintiffs brought four cognizable causes of action in their initial complaint on which summary judgment was granted: (1) wrongful termination of employment in violation of public policy; (2) negligent or intentional infliction of emotional distress; (3) negligent or intentional interference with a prospective economic advantage; and (4) conspiracy. Interesting to this case is that under the current law, the claim for wrongful discharge in violation of public policy is a tort in Utah, *see Peterson v. Browning*, 832 P.2d 1280, 1284–85 (Utah 1992), but a contract matter in Idaho, *see Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981, 987 (1996). Nevertheless, the characterization of an action is made in accordance with the law of the forum. *Records*, 887 P.2d at 868 (citing *Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 611 (9th Cir.1975)); Restatement (Second) Conflict of Laws § 124. As a result, because plaintiffs chose Utah as their forum, we characterize their claims, *for purposes of the choice of law analysis*, in accordance with Utah law.

¶ 17 Plaintiffs' claims, under Utah law, are tort claims. In Utah, wrongful termination in violation of public policy is a tort. *Peterson*, 832 P.2d at 1284–85. Likewise, negligent and intentional infliction of emotional distress are torts, *see, e.g., Heiner v. Simpson*, 2001 UT 39, ¶ 8, 23 P.3d 1041; *Harnicher v. Univ. of Utah Med. Ctr.*, 962

P.2d 67, 69–70 (Utah 1998), and we recognize the tort of intentional interference with a prospective economic advantage, *see Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 301–04 (Utah 1982); *see also* 45 Am. Jur.2d *Interference* § 48 (1999). Civil conspiracy is also a tort. *See* 16 Am.Jur.2d *Conspiracy* § 51 (1998). We therefore conclude that plaintiffs' claims lie entirely in tort.

2. "Most Significant Relationship" Analysis

¶ 18 Having concluded, for purposes of the choice of law analysis, that plaintiffs' claims sound in tort, we next determine which state "has the most significant relationship to the occurrence and the parties." Restatement (Second) Conflict of Laws § 145(1) (1971). We have previously applied Section 145 of the Restatement (Second) of Conflict of Laws, accompanied by an applicable set of factors for a particular tort, as the Utah test for determining which state has the most significant relationship to a tort case. *See Forsman v. Forsman,* 779 P.2d 218, 219–20 (Utah 1989). Section 145 "states a principle applicable to all torts and to all issues in tort," Restatement (Second) Conflict of Laws § 145 cmt. a (1971), and lists several factors to take into account in determining which substantive law to apply: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws § 145(2) (1971). Further, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* With respect to the torts pled in this case, we do not find another set of factors in the Restatement to be any more helpful or applicable than those in section 145.

¶ 19 First, the alleged injuries to plaintiffs—wrongful discharge, infliction of emotional distress, interference with plaintiffs' employment, and conspiracy—occurred in Idaho. While Amalgamated's headquarters are located in Utah, plaintiffs were ter-

minated from the Twin Falls plant, plaintiffs' place of employment. Second, any actions taken by factory supervisors to influence plaintiffs' termination took place in Idaho. The alleged harassment and humiliation occurred in Idaho. Therefore, the conduct causing the alleged injuries also occurred in Idaho. Third, the domicile, residence, nationality, place of incorporation, and place of business of the parties all weigh in favor of application of Idaho law. The plaintiffs lived and worked in Idaho. They also threatened to reveal the alleged wrongdoings of Amalgamated to Idaho, not Utah, food safety agencies. Again, even though Amalgamated's corporate headquarters are in Utah, the factory where plaintiffs were employed is in Idaho. Finally, the relationship between the parties was centered in Idaho. In this case, we give more weight to the location of the factory where plaintiffs worked than to the location of Amalgamated's headquarters, and the fact that the parties' relationship was centered in Twin Falls is particularly compelling. Consequently, Idaho has the most significant relationship with the parties and their employment relationship, and we therefore apply the substantive law of Idaho.

### B. Standard of Review for Summary Judgment

¶ 20 While we apply Idaho law to the substantive issues presented in this case, we still follow our own rules of procedure. *See* 16 Am.Jur.2d *Conflict of Laws* §§ 151–153 (1998); Restatement (Second) of Conflict of Laws § 122 (1971). The standard of review is a matter of procedural, rather than substantive, law. *See, e.g., Bd. of Equalization of Salt Lake County v. Utah State Tax Comm'n ex rel. Benchmark, Inc.,* 864 P.2d 882, 884 (Utah 1993).

¶ 21 Summary judgment is appropriate only upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also, e.g., Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 7, 28 P.3d 686; *accord Northwest Bec–Corp. v. Home Living Serv.,* 136 Idaho 835, 41 P.3d 263, 266 (2002). In reviewing a trial court's grant of

summary judgment, we give the trial court's legal decisions no deference, reviewing for correctness. *E.g., Kearns–Tribune Corp.,* 2001 UT 55 at ¶ 7, 28 P.3d 686; *accord Northwest Bec–Corp.,* 41 P.3d at 266.

### C. Analysis of the Claims Dismissed on Summary Judgment

#### 1. Wrongful Termination in Violation of Public Policy

■ ¶ 22 The trial court analyzed plaintiffs' initial wrongful discharge claim as one pled as a Utah cause of action. We agree that plaintiffs pled a Utah cause of action. Plaintiffs' complaint alleges that "[t]he bases upon which Amalgamated relied in discharging Mr. Waddoups and Mr. Sparrow are pretextual, without just cause and in violation of . . . public policies of the State of Utah." Their complaint further states, "Utah has a compelling state interest in preserving the jobs of employees who lawfully refuse to participate in or threaten to expose illegal activity. . . ." They also state that "Utah has a compelling state interest in providing redress for employees against employers who obstruct the fulfillment of the important public policy of clean, safe[,] and healthful food." The trial court dismissed this initial claim for wrongful discharge in violation public policy because "it fail[ed] to state a claim under Idaho law." The trial court did, however, grant plaintiffs' leave to properly plead the claim as an Idaho cause of action.

¶ 23 In this instance, this wrongful termination claim pled under Utah law did not state a claim under Idaho law. As a result, the trial court was correct in dismissing this claim.

#### 2. Infliction of Emotional Distress

■ ¶ 24 Amalgamated argues that plaintiffs' infliction of emotional distress claim is preempted by federal labor law. Plaintiffs disagree. We conclude that the trial court was correct in dismissing this claim as preempted.

■ ¶ 25 The test for determining whether a state law claim is preempted by federal labor law, particularly the Labor Management Relations Act, is whether the trial court, in adjudicating the cause of action, must interpret the terms of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 411, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (holding that a state law claim that is "substantially ·dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim [under the Labor Management Relations Act] or dismissed as pre-empted by federal labor-contract law"); *Garley v. Sandia Corp.,* 236 F.3d 1200, 1207–09 (10th Cir.2001) (explaining *Allis–Chalmers,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206, and the federal policy articulated in *Textile Workers v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912 (1957), that federal courts fashion a body of federal common law pertaining to labor contract disputes, and discussing *Lingle,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410).

¶ 26 Under Idaho law, claims for negligent infliction of emotional distress and intentional infliction of emotional distress are different,[4] but the analysis for preemption purposes is the same for the two claims. To decide whether a claim for negligent or intentional infliction of emotional distress is preempted, we must determine whether, on the record before us, deciding the claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904. Said otherwise, we must decide whether the trial court might reasonably be required to construe any of the terms of the collective bargaining agreement in

---

**4.** *See Roper v. State Farm Mut. Auto. Ins. Co.,* 131 Idaho 459, 958 P.2d 1145, 1148–49 (1998) (explaining why a claim for intentional infliction of emotional distress could be maintained without a claim for negligent infliction of emotional distress and listing the elements of the tort of intentional infliction of emotional distress); *Brown v.*

*Fritz,* 108 Idaho 357, 699 P.2d 1371, 1373–75 (1985) (discussing several infliction of emotional distress cases and noting that the tort of negligent infliction of emotional distress requires that the actions of the defendant cause some physical injury to the plaintiff).

considering defendant's conduct that provides the basis for the state tort claim. *Lingle*, 486 U.S. at 405–06, 411, 108 S.Ct. 1877.

¶ 27 Whether a claim for infliction of emotional distress will require the court to interpret the collective bargaining agreement depends on the factual circumstances supporting the claim. *See Allis–Chalmers*, 471 U.S. at 213–18, 105 S.Ct. 1904; *see also Garley*, 236 F.3d at 1214; *Retherford v. AT & T Communications of the Mountain States, Inc.*, 844 P.2d 949, 971–72 (Utah 1992); *Peterson v. Delta Airlines, Inc.*, 2002 UT App 56, ¶ 14, 42 P.3d 1253 ("[A]n emotional distress claim does not necessarily require interpretation of the [collective bargaining agreement]."). In evaluating whether the trial court might reasonably be required to interpret terms of the collective bargaining agreement in considering the factual circumstances of defendants' alleged tortious conduct in this case, we consider whether the duty involved in the tort claim exists independent of the collective bargaining agreement or whether the claim is based on a duty that arises because of the collective bargaining agreement. *United Steelworkers of Am., AFL–CIO–CLC v. Rawson*, 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (construing *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. 1904 and *Electrical Workers v. Hechler*, 481 U.S. 851, 859–60, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)); *Retherford*, 844 P.2d at 971. If the duty alleged by plaintiffs' claim is created by the collective bargaining agreement, the claim is not independent of the collective bargaining agreement, which governs the employer-employee relationship, and would therefore be preempted. *See United Steelworkers of Am.*, 495 U.S. at 369, 110 S.Ct. 1904; *Retherford* 844 P.2d at 972 (discussing courts that appear to have distinguished between situations where a defendant has misused authority under a collective bargaining agreement to torment the plaintiff and situations where a defendant has inflicted the distress through conduct that is purely personal and does not implicate the exercise of supervisory authority). We consider also whether the acts alleged to have caused the emotional distress here could stand irrespective of who committed them.

*See United Steelworkers of Am.*, 495 U.S. at 371, 110 S.Ct. 1904.

¶ 28 We conclude that plaintiffs' cause of action as pled was properly dismissed as preempted as a matter of law. Taking plaintiffs' claim for infliction of emotional distress as pled, we conclude that the claim is not independent of the collective bargaining agreement. Because this tort claim depends upon the employer-employee relationship, evaluation of the claim would necessarily involve evaluation of the contract-based duties owed by the defendants to plaintiffs, which would require interpretation of the collective bargaining agreement.

¶ 29 Plaintiffs named as defendants "DOES ONE through ONE HUNDRED" in addition to Amalgamated and alleged that "each of the defendants was the agent of each other in all of the actions and matters set forth; and . . . at all of said times herein mentioned, each was acting as the agent of the other, [and each] was acting in the course and scope of its agency with its principal. . . ." Plaintiffs base their claims for infliction of emotional distress on the assertion that "defendants and each of them harassed and humiliated plaintiffs intending to injure plaintiffs and deprive them of employment opportunities." Plaintiff Waddoups claims defendants withheld medical treatment or psychological counseling despite offering it to other employees, and, through various statements and conduct, particularly the simulation of a lewd act, defendant employees accused and placed blame on him for Davis's death. Plaintiffs also allege that defendant employees "taunted Mr. Sparrow asking him frequently whether, on that particular day, defendants would be able to find an excuse to fire him." Defendants "slapped Mr. Sparrow in the head, pulled his hair and informed him that he would be terminated for any reason defendants might thereafter devise."

¶ 30 Taking plaintiffs contentions as true, particularly that "at all of said times herein mentioned, each [defendant] was acting as the agent of the other, [and each] was acting in the course and scope of its agency with its principal," we conclude that the duties allegedly breached in plaintiffs' par-

ticular tort claim are not independent of the collective bargaining agreement. The conduct of Amalgamated employees alleged by plaintiffs in support of their infliction of emotional distress claims is supervisory in nature. Plaintiffs' claims could not stand irrespective of who committed them. The emotional distress complained of was inflicted by the defendant employees by virtue of their positions as Amalgamated employees and superiors to plaintiffs. The alleged harassment and humiliation that allegedly injured plaintiffs exists in connection with the employer-employee relationship and thus arises from the collective bargaining agreement. The collective bargaining agreement sets forth the relationship, and therefore the mutual duties, between employer and employees. Thus, consideration of whether the actions complained of by plaintiffs were tortious is dependent on understanding the duties owed by defendants to plaintiffs, and the employer-employee duties are set forth in the collective bargaining agreement. Evaluation of this claim would require construction of the collective bargaining agreement. As a result, we conclude that the infliction of emotional distress claims in this case cannot exist independent of the duties addressed by the collective bargaining agreement and are therefore preempted.

3. Plaintiffs Failed to Adequately Support the Two Remaining Claims with Competent Evidence

¶ 31 As we noted previously, summary judgment is appropriate only upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also, e.g., Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 7, 28 P.3d 686; *accord Northwest Bec–Corp. v. Home Living Serv.,* 136 Idaho 835, 41 P.3d 263, 266 (2002)(quoting Idaho R. Civ. P. 56(c)). The moving party has the burden of presenting evidence to demonstrate that no genuine issue of material facts exists and that judgment as a matter of law is proper. Utah R. Civ. P. 56(e); *accord Northwest Bec–Corp.,* 41 P.3d at 266. However, once the moving party challenges an element of the nonmoving party's case on

the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact. Utah R. Civ. P. 56(e); *see, e.g., Grand County v. Rogers,* 2002 UT 25, ¶ 21, 44 P.3d 734; *accord Northwest Bec–Corp.,* 41 P.3d at 266. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e); *see, e.g., Grand County,* 2002 UT 25 at ¶ 21, 44 P.3d 734; *accord Northwest Bec–Corp.,* 41 P.3d at 266. The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue.

a. Interference with a Prospective Economic Advantage

¶ 32 Plaintiffs' claim for "negligent or intentional interference with [a] prospective economic advantage" was properly dismissed. Based on our reading of *Just's Inc. v. Arrington Construction Co.* and *Highland Enterprises v. Barker,* we conclude that Idaho would not recognize plaintiffs' negligent interference with a prospective economic advantage claim as a cognizable cause of action. *See Just's Inc.,* 99 Idaho 462, 583 P.2d 997, 1003–1005 (1978); *compare Highland Enters.,* 133 Idaho 330, 986 P.2d 996, 1004 (1999) ("[The Idaho Supreme Court] agreed with the way in which the tort had been discussed by the Washington Supreme Court in *Pleas v. City of Seattle,* 112 Wash.2d 794, 774 P.2d 1158 (1989), and the Oregon Supreme Court in *Top Service Body Shop, Inc. v. Allstate Insurance Co.,* 283 Or. 201, 582 P.2d 1365 (1978), and adopted the tort as outlined in those cases"), *with Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 302–304 (Utah 1982) (explaining that Oregon's *Top Service Body Shop* definition of the tort of interference with prospective economic relations and this definition requires proof not only that the alleged interference with the prospective business relationship was intentional, but also that defendant possessed an improper objective or intent). We therefore interpret

plaintiffs' complaint as pleading only intentional interference with a prospective economic advantage.

¶ 33 In Idaho, the elements of the tort of interference with a prospective economic advantage are as follows:

(1) The existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself (i.e. that the defendant interfered for an improper purpose or improper means) and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Highland Enters.*, 986 P.2d at 1004. Defendant avers that plaintiffs failed to identify and substantiate conduct by Amalgamated that improperly interfered with potential employment for plaintiffs. Plaintiffs' factual support in its opposition to the motion for summary judgment consists of two paragraphs that mentioned that Sparrow listed Amalgamated as a former employer—apparently on a job application, but this is not made clear by counsel—and the potential employer contacted Amalgamated. Then, plaintiffs blame Amalgamated for Sparrow's failure to be hired by the potential employer. Sparrow's deposition was cited in support of this contention, but a copy was not attached.

¶ 34 Plaintiffs did not sufficiently respond to Amalgamated's motion for summary judgment as required by rule 56 of the Utah Rules of Civil Procedure. Even if plaintiffs' counsel had provided the trial court with the cited deposition testimony, the alleged facts do not, for purposes of overcoming summary judgment, sufficiently demonstrate that Amalgamated intentionally interfered, for an improper purpose or by improper means, with Sparrow's potential employer and was the cause for Sparrow not receiving a job offer. Plaintiffs' allegations in the complaint do not allege sufficient facts to satisfy the elements of this claim. We conclude that plaintiffs did not satisfy their burden. They did not, by affidavits or as otherwise provided, offer more than conclusory assertions to demonstrate the existence of a genuine issue

for trial. Accordingly, summary judgment and the trial court's dismissal of this claim was proper.

b. Conspiracy

¶ 35 Plaintiffs' conspiracy claim was also properly dismissed. To prove the tort of civil conspiracy, a plaintiff must generally establish "concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of a common design, intention, or purpose of the alleged conspirators." 16 Am.Jur.2d *Conspiracy* § 68 (1998); *see also Argonaut Ins. Co. v. White*, 86 Idaho 374, 386 P.2d 964, 966 (1963) (holding that civil conspiracy exists as a cause of action in Idaho); *cf. Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n. 17 (Utah 1993) ("To prove civil conspiracy [in Utah], five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'") (quoting *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct.App.1987)). To overcome summary judgment, plaintiffs must offer at least some evidence that could be interpreted to satisfy the elements of the claim, but they failed to do so.

¶ 36 Plaintiffs again failed to meet their burden under rule 56 of the Utah Rules of Civil Procedure to respond to Amalgamated's motion for summary judgment. Instead of responding by setting forth specific facts demonstrating that there existed a genuine issue for trial, plaintiffs' brief response simply countered that "more discovery [was] needed to find evidence regarding those with whom Defendant conspired," and claimed they "[had] not identified co-conspirators because Defendant [had] not cooperated with discovery." Plaintiffs did not offer more than conclusory assertions to demonstrate the existence of a genuine issue for trial. Plaintiffs did not even offer a viable theory regarding the nature of any facts they sought to obtain through further discovery. Because plaintiffs did not present competent evidence in support of their claim for conspir-

acy sufficient to overcome summary judgment, we hold that the trial court did not err in granting summary judgment and properly dismissed this claim.

## II. DISMISSAL OF THE AMENDED COMPLAINT

¶ 37 We consider now the motion to dismiss the amended complaint. Again, while we apply Idaho law to the substantive issues presented in this case, we still follow our own rules of procedure, *see* 16 Am.Jur.2d *Conflict of Laws* §§ 151–153 (1998); Restatement (Second) of Conflict of Laws § 122 (1971), and the standard of review is a matter of procedural, rather than substantive, law, *see, e.g., Bd. of Equalization of Salt Lake County v. Utah State Tax Comm'n ex rel. Benchmark, Inc.,* 864 P.2d 882, 884 (Utah 1993).

■■■ ¶ 38 "When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." *Krouse v. Bower,* 2001 UT 28, ¶ 2, 20 P.3d 895; *accord Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 997 P.2d 591, 594 (2000). "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse,* 2001 UT 28 at ¶ 2, 20 P.3d 895; *accord Kelso & Irwin, P.A.,* 997 P.2d at 594.

¶ 39 Accordingly, for purposes of reviewing the dismissal of plaintiffs' amended complaint, we accept as true the factual allegations in plaintiffs' amended complaint, and we analyze whether a cognizable claim for relief has been stated.

### A. *Wrongful Discharge in Violation of Public Policy*

■■ ¶ 40 Amalgamated contends that plaintiffs' wrongful termination in violation of public policy claim is preempted by federal labor law because the claim relates to the collective bargaining agreement, and the collective bargaining agreement governs the employment relationship between plaintiffs and Amalgamated. Plaintiffs disagree, insisting that the collective bargaining agreement would not be implicated in considering the wrongful discharge claim.

¶ 41 For the reasons explained previously, the substantive law of Idaho applies. *See supra* ¶¶ 12–19. Under Idaho law, wrongful termination in violation of public policy is a contract-based cause of action. *Hummer v. Evans,* 129 Idaho 274, 923 P.2d 981, 987 (1996). To prove this claim, plaintiffs must demonstrate that the employer's motivation for their termination contravenes Idaho public policy. *See id.* at 986; *Ray v. Nampa Sch. Dist. # 131,* 120 Idaho 117, 814 P.2d 17, 21–22 (1991). The United States Supreme Court has held that when a collective bargaining agreement is in place, a state law claim between the parties that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim [under the Labor Management Relations Act] or dismissed as pre-empted by federal labor-contract law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (praising *Lueck* as "faithfully [applying] the principle of § 301 preemption developed in [*Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ]: if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.").

¶ 42 Resolution of plaintiffs' contract claim for wrongful discharge would substantially depend upon analysis of the terms of the collective bargaining agreement. The collective bargaining agreement governs the contractual employment relationship between plaintiffs and Amalgamated, and it dictates the circumstances under which plaintiffs could be terminated. Under Article 14 of the collective bargaining agreement, "The Company [Amalgamated] has the right to disci-

pline or discharge employees for just cause." To determine whether plaintiffs were wrongfully discharged would inevitably require a determination of what "just cause" means in the context of the collective bargaining agreement. The meaning of just cause is subject to various interpretations, and to permit suit for this Idaho breach of employment contract claim separate from the collective bargaining agreement would undermine the goal of a unified body of federal labor law that necessarily preempts the field. *See Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904.

¶ 43 As a result, we hold that the trial court was correct to dismiss plaintiffs' claim for wrongful termination in violation of Idaho public policy as preempted.

> B. *Remaining Claims of Infliction of Emotional Distress, Interference with a Prospective Economic Advantage, and Conspiracy*

¶ 44 The trial court granted plaintiffs leave to amend the complaint to bring only a claim for wrongful discharge in violation of Idaho public policy. Leave was not granted to bring again the claims already dismissed on summary judgment—infliction of emotional distress, interference with a prospective economic advantage, and conspiracy. The trial court did not err in dismissing these claims that it had already adjudicated.

## CONCLUSION

¶ 45 The district court order granting summary judgment on plaintiffs' initial complaint is affirmed. The district court order granting defendant's motion to dismiss plaintiffs' amended complaint is also affirmed.

¶ 46 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice RUSSON concur in Justice WILKINS' opinion.