**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

N8 MEDICAL, INC.; N8MEDICAL LLC,

    Plaintiffs,

and

BRIGHAM YOUNG UNIVERSITY,

    Intervenor Plaintiff,

and

N8 PHARMACEUTICALS, INC.,

    Intervenor Plaintiff - Appellant,

v.

COLGATE-PALMOLIVE COMPANY,

    Defendant - Appellee.

No. 17-4049
(D.C. No. 2:13-CV-01017-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **BACHARACH**, Circuit Judges.
_____

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But this order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

This appeal grew out of licenses given to two separate companies to work with the same products. The products were chemical compounds called "ceragenins," and the two licensees were N8 Pharmaceuticals (Pharma) and Colgate-Palmolive Company. Pharma's license was expansive but was issued after Colgate had already applied for a patent on a particular application of ceragenins. The subsequent publication of Colgate's patent application allegedly damaged Pharma, which claimed misappropriation of trade secrets and unfair competition.

The district court granted summary judgment to Colgate on both claims. We affirm. There was no misappropriation of trade secrets because Colgate had not received confidential information from Pharma, and Pharma waived its challenge to the district court's ruling on the unfair-competition claim.

I.    **Background**

The relative rights of Pharma and Colgate stem from a series of transactions involving the ceragenins. The rights originated with Brigham Young University, where ceragenins had been discovered. BYU granted a license to Osmotics Corporation (later succeeded by "Ceragenix Pharmaceuticals"), which obtained broad rights to explore commercial uses of ceragenins. In 2008, Ceragenix sold ceragenins to Colgate.

After the Ceragenix license expired, BYU granted a new license to N8 Medical, LLC. This license allowed N8 Medical to explore commercial applications of ceragenins. With this license, N8 Medical also sold ceragenins to Colgate.

Colgate tested the ceragenins at a New Jersey facility between 2008 and 2013. Based on these tests, Colgate filed a patent application in December 2011 for a product combining ceragenins with an ingredient already being used in Colgate's mouthwash. In the absence of any further action from Colgate, the patent would be published roughly eighteen months later. Only then would the contents of the patent application become public.

During this period, Pharma acquired its interest in the ceragenins. In August 2012, Pharma acquired the exclusive right to commercialize ceragenins in a broad range of oral-care products.

Roughly eleven months later (July 2013), Colgate's patent was issued, rendering the patent application public.



According to Pharma, publication of the patent application revealed 45 of its trade secrets.

## II. Standard of Review

We engage in de novo review of the district court's summary-judgment ruling. *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). Summary judgment is appropriate when the moving party shows that (1) there is no genuine dispute as to any material fact and (2) the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On factual issues, we draw all reasonable inferences in favor of the non-moving party, Pharma. *Tabura*, 880 F.3d at 549.

## III. Claim of Misappropriation of Trade Secrets

On the claim involving misappropriation of trade secrets, the district court correctly held that Colgate was entitled to summary judgment under New Jersey law.

### A. Choice of Law

The threshold issue is which state's law applies to the substantive issues. Pharma invokes Utah law, and Colgate invokes New Jersey law. In resolving this disagreement over the applicable law, we engage in de novo

review. *Kipling v. State Farm Mut. Auto Ins.*, 774 F.3d 1306, 1310 (10th Cir. 2014).

In a diversity action, we apply the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). Because the forum state is Utah, we focus on Utah's choice-of-law rules for tort claims.

Utah applies the "most significant relationship" test from the Second Restatement of Conflict of Laws. *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). Under this test, we consider which state "'has the most significant relationship to the occurrence and the parties.'" *Id.* at 1060 (quoting Restatement (Second) of Conflict of Laws § 145(1) (1971)). For this inquiry, four factors are pertinent:

1. the place where the injury occurred,

2. the place where the underlying conduct occurred,

3. the parties' domicile, residence, nationality, place of incorporation, and place of business, and

4. the place where the parties' relationship, if any, is centered.

*Id.* (quoting Restatement (Second) of Conflict of Laws § 145(2)).

The Restatement provides guidance on how to weigh these factors. For example, the place of injury becomes less significant when the claim involves unfair competition in the form of "misappropriation of trade values." Restatement (Second) of Conflict of Laws § 145 cmt. f. When this

5

claim is involved, the court should focus most heavily on the place of the defendant's underlying conduct. *Id.*

Pharma urges application of Utah law but does not suggest that Utah bears the most significant relationship to the claim involving misappropriation of trade secrets. Instead, Pharma urges application of Utah law based on the absence of a conflict between New Jersey law and Utah law.

Of course, selecting the applicable law would be unnecessary in the absence of any meaningful conflict between the laws of Utah and New Jersey. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1224 (10th Cir. 2000) ("[C]ourts routinely decline to consider choice of law issues in the absence of a demonstrated conflict."). But the possibility that a choice-of-law analysis might prove unnecessary "does not imply . . . that before embarking on a choice-of-law analysis a court must apply the relevant substantive rules of each jurisdiction to the facts of the case and determine what the various results would be and whether they would differ." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331-32 (2d Cir. 2005). Thus, the court can select the applicable state law whenever the selection could create even the possibility of a different outcome. *See id.* (invoking choice-of-law analysis based on "relevant substantive differences that could have a significant impact on the outcome of the case").

6

Such a possibility exists here. Pharma relies on Utah's characterization of trade secrets as property rights. *See InnoSys, Inc. v. Mercer*, 364 P.3d 1013, 1020 (Utah 2015) ("A trade secret is a right of property."). But "[i]t is not entirely clear where New Jersey law stands on that point," for the state's intermediate appellate court has left open "whether a trade secret should be viewed as a property right or its misappropriation as a breach of a confidential relationship." *Grow Co. v. Chokshi*, 959 A.2d 252, 267 (N.J. Super. Ct. App. Div. 2008). This potential difference in the states' laws could prove material here because

- Pharma had a property interest in trade secrets obtained through BYU's license, but

- Colgate never received any confidential information from Pharma.

In light of the potential difference in the states' laws on trade secrets, we apply Utah's most-significant-relationship test.

Under this test, the applicable state law is New Jersey's. As we have noted, the most important factor we consider is the place of the defendant's underlying conduct. *See* p. 6, above. Colgate tested the ceragenins in New Jersey, and it was there that Colgate submitted the application for a patent. Thus, we apply New Jersey law on the claim of misappropriation of trade secrets.[1]

---

[1] The other three factors also do not point to Utah law. For example, Pharma's officers and directors were in Nevada. And Pharma was

7

**B.      Pharma's Claim of Misappropriation of Trade Secrets**

Under New Jersey common law,[2] misappropriation of a trade secret is actionable only when the plaintiff confidentially communicates a trade secret to the defendant. *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982) (applying New Jersey and Pennsylvania law); *Rycoline Prods. v. Walsh*, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000). This requirement was missing here because Colgate had obtained ceragenins from Ceragenix and N8 Medical, not Pharma. Colgate never received anything from Pharma.

Pharma argues that the Restatement of Torts does not restrict the tort of misappropriation to confidential disclosures by the plaintiff to the defendant. But this restriction comes from New Jersey opinions, not the

---

incorporated in Nevada rather than Utah. Lastly, the center of the parties' relationship was immaterial because Pharma and Colgate had no relationship.

[2]      In January 2012, the New Jersey Trade Secrets Act went into effect. *See* N.J. Stat. Ann. § 56:15. When the Act took effect, Colgate had already filed its patent application, but the application had not yet become public. In its opening brief, Pharma discusses both New Jersey common law and the Act without explaining which applies to this claim. In response, Colgate argues that common law, not the Act, governs Pharma's claim because it concerns conduct that took place both before and after the effective date of the Act. Pharma's reply brief appears to accept this argument, addressing only the common law in connection with the misappropriation claim. Therefore, we too will evaluate Pharma's claim under New Jersey common law. *See In re FCC 11-161*, 753 F.3d 1015, 1101 (10th Cir. 2014) (crediting an argument made in the appellee's response brief because the appellant failed to rebut this argument in its reply brief).

Restatement. For example, a New Jersey intermediate appellate court stated this restriction in *Rycoline Products v. Walsh*, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000). So did the Third Circuit, applying New Jersey law, in *Rohm & Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982). These opinions indicate that the New Jersey Supreme Court would restrict the tort to confidential disclosures by the plaintiff, not a third party like Ceragenix or N8 Medical. *See Stickley v. State Farm Mut. Auto. Ins.*, 505 F.3d 1070, 1077 (10th Cir. 2007) ("The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940))). Because Colgate did not obtain the trade secrets from Pharma, we conclude that the claim for misappropriation of trade secrets fails as a matter of law.[3]

---

[3]    The district court's rationale was different, rejecting the claim because Pharma had no interest in ceragenins when the patent application was filed. But we may affirm the district court's ruling on any ground supported by the record. *Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1321 (10th Cir. 2003).

## IV.	Claim of Unfair Competition

The district court also granted summary judgment to Colgate on the claim of unfair competition.

### A.	Choice of Law

Again the threshold issue is which state's law applies. On the claim of unfair competition, Pharma urges application of New York law, and Colgate again invokes New Jersey law. We agree with Colgate and apply New Jersey law on this claim.

The most important factor is the location of Colgate's conduct. Restatement (Second) of Conflict of Laws § 145 cmt. f (1971); *see* p. 6, above. Pharma focuses on eight actions by Colgate:

1.	Colgate's research into the combined effect of ceragenins and products in Colgate's mouthwash,

2.	Colgate's failure to disclose the results of that research to Ceragenix,

3.	Colgate's failure to disclose its unauthorized activities to BYU and N8 Medical,

4.	Colgate's preparation and filing of the patent application, claiming sole ownership of the inventions based on the research,

5.	Colgate's concealment of the drafting and filing of the application,

6.	Colgate's concealment of the tests and the application at a meeting with N8 Medical in New York,

7. Colgate's decision to enter into a second agreement with N8 Medical to purchase ceragenins while continuing to conceal the tests and the application, and

8. Colgate's continuing concealment of the patent application after receiving notice of the impending publication.

With the exception of a single meeting in New York (No. 6), virtually all of the other events took place in New Jersey. For example, Colgate tested ceragenins in New Jersey and developed new products there. And Colgate drafted and filed its patent application in New Jersey.

Colgate did conduct one meeting with N8 Medical in New York, but Pharma was not present. The single meeting in New York does not overwhelm the far stronger connections between Colgate's conduct and New Jersey.

Pharma points out that Colgate had contracts that called for application of New York law. But these contracts were with Ceragenix and N8 Medical, not Pharma, and Pharma is not alleging a breach of contract. Colgate's two contracts with choice-of-law provisions do not bear on which state has the most significant relationship to Pharma's claim of unfair competition. Again, that state is New Jersey.

**B.    Pharma's Claim of Unfair Competition**

The district court rejected the claim of unfair competition based on the invalidity of the claim involving misappropriation of trade secrets. On reconsideration, the court added a second rationale for rejecting the claim

11

of unfair competition, stating that Pharma and Colgate had not competed against one another. The second rationale is decisive here.

When a district court rejects a claim on two or more independent grounds, the appellant must challenge each. *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016). But in its opening brief, Pharma failed to address the district court's second rationale (the absence of competition between Pharma and Colgate). The failure to address this rationale constituted a waiver. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004); *see Starkey v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

Pharma eventually addressed this issue in its reply brief, arguing there that

- New Jersey law does not confine the tort to conduct involving competitors and

- Colgate and Pharma were competitors.

But making these arguments in the reply brief was too late to prevent a waiver. *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236 n.2 (10th Cir. 2016). This waiver of a challenge to the district court's second rationale prevents reversal on the unfair-competition claim.

12

**V. Conclusion**

The district court granted summary judgment to Colgate on both of Pharma's claims, concluding that (1) Pharma lacked an interest in the trade secrets when Colgate filed a patent application and (2) Pharma had not been in competition with Colgate. We affirm because (1) Pharma did not communicate its trade secrets to Colgate and (2) Pharma waived its challenge to the district court's ruling on the lack of competition between Colgate and Pharma.

Entered for the Court


Robert E. Bacharach
Circuit Judge

13