2006 UT App 293

**N.A.R., INC., Plaintiff and Appellant,**

v.

**Destani ELMER aka Destani Nash, and Jonathan Elmer, Defendants and Appellees.**

No. 20050520–CA.

Court of Appeals of Utah.

July 13, 2006.

Ronald F. Price, Peters Scofield Price, Salt Lake City, for Appellant.

Destani Elmer and Jonathan Elmer, Ogden, Appellees Pro Se.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Plaintiff N.A.R., Inc. (NAR) appeals the trial court's order denying recovery of attorney fees and interest against a non-contracting spouse under the Utah Family Expense Statute (Family Expense Statute). *See* Utah Code Ann. § 30–2–9 (1998). We affirm.

## BACKGROUND

¶ 2 On two occasions, Defendant Destani Elmer visited Dr. Robert C. Newman to receive medical services.[1] Before receiving care, she signed a contract providing that she was responsible for the cost of the medical services, as well as "reasonable attorney fees and interest of 18% per annum" should she fail to pay.

¶ 3 Destani did not pay for the medical services and Dr. Newman assigned the account to NAR for collection. NAR filed suit against Destani and her husband, Jonathan Elmer. The Elmers never answered the complaint, and NAR submitted default judgment pleadings. The clerk of the trial court rejected the pleadings, stating that because only Destani signed the contract with Dr. Newman, Jonathan was not liable for the attorney fees or interest provided for in that agreement. Consequently, NAR filed a Motion for Entry of Default Judgment. The trial court found that both Jonathan and Destani were liable for the actual medical care costs as family expenses, but concluded that "under the [Family Expense Statute] only the signing spouse to a contract is liable

---

1. Although NAR's brief identified the medical services as being provided in connection with Destani's pregnancy, counsel for NAR indicated at oral argument that Dr. Newman actually provided dental care.

for the contractual attorney[ ] fees and interest." Therefore, judgment was entered against Destani for the entire $755.20 requested, which included the interest and attorney fees, and against Jonathan for the $486 incurred for the actual medical services. NAR appeals from the judgment.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 4 The narrow issue on appeal is whether attorney fees and interest incurred under the terms of a contract for medical treatment are "family expenses" under the Family Expense Statute.[2] *See* Utah Code Ann. § 30–2–9. The interpretation of a statute is a question of law that we review for correctness. *See Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 519 (Utah 1997). " '[W]hen deciding questions of statutory interpretation, we do not look to language in isolation. Rather, we look first to the statute's plain language, in relation to the statute as a whole, to determine its meaning.' " *Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 40, 116 P.3d 323 (alteration in original) (quoting *Calhoun v. State Farm Mut. Auto. Ins. Co.,* 2004 UT 56, ¶ 18, 96 P.3d 916). " '[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve.' " *Id.* (alteration in original) (quoting *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795). "Only if we conclude that the statutory language is ambiguous do we 'look to legislative history and other policy considerations for guidance.' " *Id.* (quoting *ExxonMobil Corp. v. State Tax Comm'n,* 2003 UT 53, ¶ 14, 86 P.3d 706).

## ANALYSIS

¶ 5 As a general rule, a husband or wife is not personally liable for the contracts or debts of the other spouse. Section 30–2–5 of the Utah Code states that "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other ... *contracted* or incurred during marriage, *except family expenses* as provided in [s]ection 30–2–9." Utah Code Ann. § 30–2–5 (1998) (emphasis added). The Family Expense Statute states that "[t]he expenses of the family and the education of the children are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately." *Id.* § 30–2–9.

¶ 6 Utah adopted the Family Expense Statute in 1898. *See id.* The doctrine that a spouse is required to pay for "necessary" or "family" expenses incurred by the other spouse has its basis in the "common-law duty of a husband to provide for the necessary expenses of his wife.... Thus, a husband is liable for necessaries furnished to his wife while he is derelict in his duty to support her." 41 Am.Jur.2d *Husband & Wife* § 160 (2005). This statutory protection was needed because "at common law[,] a married woman was incapable of contracting and thus her contracts regarding her purchases of goods and services were rendered void."[3] *Id.* § 156. Under modern law, the doctrine has been extended to render both spouses liable for the family expenses incurred by the other. *See id.* Utah's Family Expense Statute has never distinguished between the liability of the husband and the liability of the wife for the other spouse's debts. *See* Utah Code Ann. § 30–2–9.

¶ 7 The precise issue we are asked to decide in this case is one of first impression in this jurisdiction. Neither the language of the statute itself nor prior decisions from the

---

**2.** It is well established that the costs of the medical services themselves are family expenses. *See Ottley v. Hill,* 21 Utah 2d 396, 446 P.2d 301, 302 & n. 2 (1968) (holding that the Family Expense Statute creates a duty of support which includes "medical care and treatment"); *see also St. Mary of Nazareth Hosp. v. Kuczaj,* 174 Ill.App.3d 268, 123 Ill.Dec. 745, 528 N.E.2d 290, 294 (1988) ("Under the [family expense] statute, a spouse may be legally liable for the hospital and medical expenses of the other spouse."); 41 Am.Jur.2d *Husband & Wife* § 178 (2005) (stating that medical services are a necessary that a "spouse is bound to provide the other spouse, and for which the first spouse is liable").

**3.** At the same time the Family Expense Statute was adopted, Utah lawmakers adopted a statute expressly granting married women the right to contract. *See Proposed Rev. of the Stats. of Utah 1897,* pt. 1, at 412–13.

Utah Supreme Court are directly controlling on the question presented.

## I. Statutory Language

¶ 8 In any issue relating to statutory interpretation, we begin with an examination of the language of the statute itself. *See Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 14, 28 P.3d 686. NAR contends that the plain language of the relevant statutes supports its position, stating that "[i]t would have been a simple matter for the [l]egislature to provide that the non-contracting spouse is liable only for the principal amount of the family expense." The statutes state merely that "[t]he expenses of the family and of the education of the children are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately," Utah Code Ann. § 30–2–9, and neither spouse is liable for the debts, obligations, or liabilities of the other "except family expenses as provided in [s]ection 30–2–9," *id.* § 30–2–5. NAR contends that because neither statute places any limitations on the term "family expenses," the legislature must have intended for that term to include interest and attorney fees.

¶ 9 In contrast, we note that the legislature could have expressly included contractual interest and attorney fees as family expenses recoverable against a non-contracting spouse. Instead, section 30–2–5 states that a husband or wife is not responsible for the debts, obligations, and liabilities *contracted* during the marriage by the other spouse. *See id.* Although there is an exception for family expenses, nothing in the language of the statute itself also excepts attorney fees and interest agreed to in the event of default by the contracting spouse. *See id.* ("Neither spouse is personally liable for the separate debts, obligations, or liabilities of the other . . . contracted or incurred during marriage, except family expenses as provided in [s]ection 30–2–9."). A narrow reading of this exception to the general rule that one spouse is not liable for the other's contracts would limit liability under the Family Expense Statute to the amount of the goods or services actually used by the family—in this case, the medical services. *Cf. Johnson v. Utah Dep't of Transp.,* 2006 UT 15, ¶ 19, 133 P.3d 402 ("This court has always read the discretionary function exception to the immunity waiver narrowly. *To do otherwise would allow the exception to swallow the rule.*" (emphasis added) (citation omitted)); *Kearns–Tribune,* 2001 UT 55 at ¶ 15, 28 P.3d 686 ("Because we construe the [Utah Open and Public Meetings] Act broadly, it therefore follows that the exceptions be strictly construed.").

¶ 10 Upon review of the statutory language, we determine that the legislative intent on this point is not apparent. We therefore must go beyond the plain language of the statute in an attempt to determine whether the legislature intended to extend the exception to the general rule that one spouse is not liable for the contractual obligations of the other to include contractually imposed interest and attorney fees.[4]

## II. Judicial Construction

### 1. *Other Jurisdictions*

¶ 11 NAR's argument that Jonathan is liable for the attorney fees and interest in the contract signed by Destani is supported by recent cases from other jurisdictions. *Boswell Memorial Hospital v. Bongiorno,* 314 Ill.App.3d 620, 247 Ill.Dec. 421, 732 N.E.2d 137 (2000), presents a factual scenario similar to that present here. In *Bongiorno,* the hospital sued the wife for payment of medical bills incurred by her deceased husband, as well as interest and attorney fees provided for in the contract for medical services that her husband had signed. *See id.* 247 Ill.Dec. 421, 732 N.E.2d at 138. The trial court granted summary judgment in the hospital's favor, and the wife appealed, challenging the court's award of interest and attorney fees as beyond the scope of Illinois's family expense statute, *see id.* 247 Ill.Dec. 421, 732 N.E.2d at 138–39, which is nearly identical to Utah's Family Expense Statute. After defining a

---

4. Counsel for NAR has not cited, and we have not found, any legislative history related to Utah's adoption of the Family Expense Statute.

family expense as something that "contributes to the welfare of the family and benefits or maintains its integrity," the court determined that interest and attorney fees were family expenses because they were "components" of the agreement with the hospital. *Id.* 247 Ill.Dec. 421, 732 N.E.2d at 139. The court stated:

> Components of the compensation agreed to by the parties in return for the hospital care are deemed to be a family expense. We hold that, when a spouse is liable for a family expense under [Illinois's family expense statute], a creditor may recover all components agreed upon, such as interest and reasonable attorney fees, that the contract permits.

*Id.* 247 Ill.Dec. 421, 732 N.E.2d at 139–40.

¶ 12 In *Sunkidd Venture, Inc. v. Snyder-Entel*, 87 Wash.App. 211, 941 P.2d 16 (1997), the Washington Court of Appeals held that the defendant could be liable on remand under the state's family expense statute for unpaid lease costs that she and her then-husband had incurred. *See id.* at 19. The court also noted that the terms of the lease included a provision for "attorney fees incurred in any action arising from default or breach by the tenant." *Id.* The court stated that if the plaintiff prevailed on remand, the plaintiff would be entitled to receive as family expenses the attorney fees provided for in the lease. *See id.* NAR urges this court to follow the analysis in these cases and hold that all components of a contract for family expenses are also family expenses recoverable against the non-contracting spouse.

¶ 13 There are, however, several very early cases from another jurisdiction which hold, contrary to *Bongiorno* and *Sunkidd Venture*, that interest and attorney fees are not recoverable as family expenses when included in a promissory note executed by only one spouse. In *Fitzgerald v. McCarty*, 55 Iowa 702, 8 N.W. 646 (1881), the husband executed a promissory note in exchange for goods purchased on an open account and used by

his family. *See id.* at 647. The trial court rendered judgment against the wife, finding that she could be held responsible for ten percent interest and attorney fees as provided for in the note executed by the husband. *See id.* at 648. The Supreme Court of Iowa reversed, holding that the wife could not be held liable on the note because she did not "agree in writing" to the interest or attorney fees, and such interest and fees could not be regarded as family expenses because they were not incurred "for something used in the family" or "kept for use" and thus had not "been beneficial thereto." *Id.* Other early Iowa cases with similar facts reached the same conclusion. *See McCartney & Sons Co. v. Carter*, 129 Iowa 20, 105 N.W. 339, 340 (Iowa 1905) (holding that wife was not liable under Iowa's family expense statute for interest on note that husband agreed to, even though note was for rental of the family dwelling); *Morse v. Minton*, 101 Iowa 603, 70 N.W. 691, 693 (1897) (holding that husband could not "by a subsequent contract, increase the amount for which [wife] is liable, as by giving a promissory note which provides for a higher rate of interest than that for which she was liable under the original contract, or for attorney[ ] fees"). Under the reasoning of these decisions, NAR would be entitled to collect the medical fees from either Destani or Jonathan, but it could collect interest and attorney fees only from Destani, the spouse who contractually agreed to pay those expenses.

### 2. *Utah Decisions*

¶ 14 Only a few Utah cases have discussed the Family Expense Statute in any respect. In *Berow v. Shields*, 48 Utah 270, 159 P. 538 (1916),[5] the Utah Supreme Court held that the Family Expense Statute did not apply only when "necessaries" were purchased; rather, the court stated that "all that is required by the statute is that the things purchased are legitimate or proper family expenses."[6] *Id.* at 539. The court held that

---

**5.** Although *Berow v. Shields*, 48 Utah 270, 159 P. 538 (1916), was issued in 1916, the language of the Family Expense Statute has not been amended in the ninety years since that case was decided.

**6.** "Necessaries" are defined as "[t]hings indispensable, or things proper and useful, for the sustenance of human life," including "food, drink, clothing, *medical attention*, and a suitable place of residence." *Black's Law Dictionary* 714

various items of clothing and adornment purchased by the wife, including ladies' hose, a fur coat, a feather, and a comb, would qualify as family expenses under the statute, but concluded that the husband was not liable for his wife's debts because the marital relationship had been severed by separation and a petition for divorce before the purchases were made. *See id.* at 538, 540.

¶ 15 Later, in *Morrison v. Federico*, 120 Utah 75, 232 P.2d 374 (1951), the supreme court defined "family expenses" as "those expenditures which are proper to support the family and necessary to promote the well-being and best interests of its members." *Id.* at 377. The court added that expenses constitute family expenses when the services paid for "substantially benefit the unit and are necessary for its preservation." *Id.* at 378. In *Morrison,* the wife incurred attorney fees for two actions: a habeas corpus proceeding to recover custody of her child from her husband and parents-in-law, and institution of divorce proceedings. *See id.* at 375. The husband and wife later reconciled and the attorney sought to recover for his services under the Family Expense Statute. *See id.* at 375–76. The Utah Supreme Court held that the fees to recover the child in the habeas proceeding were family expenses because they promoted the family and served the best interests of the child. *See id.* at 376. The court, however, ruled that the attorney could not use the statute to recover his fees for the divorce action because an action to dissolve the marriage did not preserve the family unit. *See id.* at 377.

¶ 16 Although it is undeniable that the medical services provided to Destani furthered the well-being of the Elmer family, the contractual attorney fees and interest appear to be for the benefit of the provider and the collections agency. Consequently, the early decisions from Iowa may be more consistent with Utah statutory interpretation than *Bongiorno* and *Sunkidd Venture.*

### 3. *Public Policy*

¶ 17 Finally, NAR argues that public policy supports its position. In *Berow,* the Utah Supreme Court acknowledged that the family expense statute is intended "for the protection of the merchant and trader as well as for that of the husband and wife." 159 P. at 540. In contrast, some jurisdictions have focused on protection of creditors alone as the purpose of the statute. *See Boswell Mem'l Hosp. v. Bongiorno,* 314 Ill.App.3d 620, 247 Ill.Dec. 421, 732 N.E.2d 137, 139 (2000) ("The purpose of the [a]ct is to protect creditors."); *Proctor Hosp. v. Taylor,* 279 Ill.App.3d 624, 216 Ill.Dec. 614, 665 N.E.2d 872, 875 (1996) ("[W]e must assume that the purpose of this statute is to protect creditors."). NAR claims that if creditors are to be protected, they must be able to recover the costs of collection upon default. If creditors are not allowed to recover their interest and attorney fees as family expenses, NAR contends that they will be hesitant to extend credit without first obtaining the signature of both spouses, which is often impractical, as in the case of medical emergencies. "Thus," NAR asserts, "the result sought by NAR protects not only the creditor, it also serves to further the interests of the family by encouraging merchants, doctors, dentists[,] and others to provide necessary goods and services to family members who may not otherwise be able to obtain those necessary goods and services."

¶ 18 We note that the statute protects creditors by making the non-contracting spouse liable for the underlying cost of the goods or service actually provided—a liability that would not exist absent the Family Expense Statute. *See* Utah Code Ann. § 30-2-5 ("Neither spouse is personally liable for the separate debts ... contracted ... during marriage, except family expenses....").

---

(6th ed.1991) (emphasis added). Liability for necessaries, however, "extends to articles which would ordinarily be necessary and suitable, in view of the rank, position, fortune, earning capacity, and mode of living of the individual involved." *Id.*

In *Smith v. Dalton,* 58 Wash.App. 876, 795 P.2d 706 (1990), the Washington Court of Ap-

peals ruled that Washington's family expense statute applied only to "necessaries" rather than "any item brought into and used by the family." *Id.* at 711. Therefore, it appears that Utah cases have defined what types of items fall under the Family Expense Statute more broadly than some other jurisdictions.

With respect to NAR's position that doctors would be unwilling to provide medical services to a married person if the other spouse was not equally liable for contractual interest and attorney fees, the record contains no factual findings that support this argument. We are also skeptical of NAR's hypothesis. We take judicial notice that doctors and merchants routinely provide goods and services to single persons despite the fact that only the actual recipient will be responsible for the principal payment, and for any contractual interest and attorney fees agreed to, in the event of default.

¶ 19 Furthermore, we believe it is appropriate for a provider of goods or services to give notice to whomever it looks to for payment of any penalties or fees it will impose upon default.[7] While the non-contracting spouse may be presumed to know that his or her family is receiving medical services, food, or other tangible items beneficial to the family unit, it is not equally obvious that he or she should be aware of contractual obligations beyond the cost of those goods or services. In addition, the imposition of significant, unknown obligations on a non-contracting spouse is likely to disrupt marital harmony.[8] Likewise, a more complete understanding of the joint obligations of the couple may assist with the management of family finances to the benefit and preservation of the family unit.[9]

¶ 20 Although the purpose of the Family Expense Statute was to protect both the spouses and creditors, *see Berow v. Shields,* 48 Utah 270, 159 P. 538, 540 (1916), we have no doubt that the legislature would find the preservation of the family unit of paramount concern. This is particularly true where the creditor is protected by its ability to recover the actual cost of the goods or service enjoyed by the family from either spouse and can also make the provision of services conditional upon both spouses executing any relevant contract.[10] We recognize that this approach is more cumbersome for a provider who seeks to hold the non-contracting spouse liable for interest or attorney fees, but we believe that the legislature would narrowly construe the circumstances under which a married person may be treated less favorably than a single person in terms of the imposition of contractual liability.

## CONCLUSION

¶ 21 We hold that the term "family expenses" as used in Utah Code sections 30–2–5 and 30–2–9 means the actual cost of the goods or services provided and does not include contractual attorney fees or interest agreed to by one spouse as a penalty for default.

¶ 22 Affirmed.

¶ 23 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JAMES Z. DAVIS, Judge.

---

7. Under Utah law, "[t]he parties to a lawful contract may agree upon any rate of interest." Utah Code Ann. § 15–1–1(1) (2005) (emphasis added).

8. It cannot be beneficial to the preservation of the family unit where one spouse is surprised by significant debts, interest, and penalties incurred by the other. *See, e.g., Saks & Co. v. O'Meara,* No. 97 C 829, 1998 WL 89348, at *1, 1998 U.S. Dist. LEXIS 2211, at *4 (D.Ill. Feb.11, 1998) (noting that wife had made aggregate purchases of $400,000 on her Saks credit card and had incurred another $100,000 in finance charges and penalties).

9. Marital disagreement over family finances is cited as a major cause of divorce. *See, e.g.,* Kathy Chu, *Many Marriages Today Are 'Til Debt Do Us Part,* USA Today, Apr. 27, 2006 ("Research scientist Jay Zagorsky tracked married couples born from 1957 to 1964 and found that money is consistently one of their top three topics for argument."); *Why Money is the Leading Cause of Divorce,* Jet Magazine, Nov. 18, 1996, *available at* http://www.findarticles.com/p/articles/mi_m1355/is_nl_v91/ai_18930297/print ("Fifty-seven percent of divorced couples in the United States cited financial problems as the primary reason for the demise of their marriage.").

10. As counsel for NAR noted at oral argument, either spouse could be liable for the statutory prejudgment interest rate even in the absence of contractual liability. *See* Utah Code Ann. § 15–1–1(2) (2005).