**2015 UT App 41**

### THE UTAH COURT OF APPEALS

OUTSOURCE RECEIVABLES MANAGEMENT, INC.,
Plaintiff and Appellee,
*v.*
KELLENE BISHOP AND SCOTT RAY BISHOP,
Defendants and Appellants.

Memorandum Decision
No. 20140082-CA
Filed February 20, 2015

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 139403193

Kellene Bishop and Scott Ray Bishop,
Appellants Pro Se

Chad B. McKay, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1     Kellene and Scott Ray Bishop appeal from a final
judgment entered against them and in favor of Outsource
Receivables Management, Inc. (Outsource). We affirm.

¶2    In June 2012, Kellene was a surgical patient at Orem Community Hospital.[1] While preparing for surgery, Kellene met an anesthesiologist who identified himself as her doctor. Kellene replied that she was his patient. Although Kellene believed the anesthesiologist was employed by the hospital, he was in fact employed by an affiliated medical practice, Lone Peak Anesthesia, LC (LPA). After her surgery, Kellene received two bills—one from the hospital for surgery, and another from LPA for the anesthesiologist's services. Kellene and Scott made three partial payments to LPA but later asked the company for relief from payment on the basis of hardship. LPA denied the Bishops' request and eventually assigned its claim against them to Outsource, a debt-collection agency.

¶3    Outsource filed suit against the Bishops, seeking payment of outstanding debt and requesting awards of prejudgment interest, costs, and attorney fees. The case proceeded to a bench trial. Though the Bishops did not specifically deny their obligation to pay for the anesthesia, they argued the cost should have been borne by the hospital. The Bishops further argued the payment for anesthesia should be subsumed into their obligation to pay the hospital for surgery.

¶4    After hearing the evidence, the trial court determined Kellene and LPA had a contract implied in law and in fact, as evidenced by Kellene's receipt of the benefit of surgery with anesthesia and by the verbal exchange between Kellene and the anesthesiologist. It therefore entered judgment in favor of Outsource and against Kellene and Scott for $801.57 for the

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 250 n.1 (Utah Ct. App. 1997) (citation and internal quotation marks omitted).

services rendered.[2] The court also awarded $3,680 in attorney fees and $95 in costs against Kellene. The trial court based the attorney fee award on its finding that Kellene's defense was in bad faith because she had previously received anesthesia services from LPA in 2008 and had been separately billed. The Bishops appeal.

I. Contract Implied in Fact

¶5    The Bishops challenge the trial court's finding that Kellene and LPA formed a contract implied in fact. "Whether a contract implied in fact exists is generally considered a question of fact, and we review a trial court's factual findings under the deferential clearly erroneous standard." *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 7, 179 P.3d 808. "However, we 'retain[] the power to decide whether, as a matter of law, a reasonable [fact finder] could find that an implied contract exists.'" *Id.* (alterations in original) (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 401 (Utah 1998)).

¶6    Contracts implied in fact are "established by conduct." *Knight v. Post*, 748 P.2d 1097, 1100 (Utah Ct. App. 1988). To show the existence of a contract implied in fact, Outsource was required to prove that (1) Kellene requested LPA to perform the work, (2) LPA expected Kellene to compensate it, and (3) Kellene

_____

2. Outsource pursued the claim as a family expense. "It is well established that the costs of . . . medical services . . . are family expenses" for which both spouses are liable. *N.A.R., Inc. v. Elmer*, 2006 UT App 293, ¶ 4 n.2, 141 P.3d 606. Under the family expense statute, the "expenses of the family . . . are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately." Utah Code Ann. § 30-2-9(1) (LexisNexis 2013).

knew or should have known that LPA expected compensation. *See id.* at 1101.

¶7      The Bishops dispute the trial court's finding on each of these elements. They first contend that the hospital or the surgeon, not Kellene, requested LPA's services. The trial court specifically found to the contrary, explaining that Kellene requested LPA's services when she presented herself for surgery and consented to the care and treatment by the anesthesiologist. As Kellene testified, she "consented to treatment for whatever was necessary to perform the procedure on [her] in a safe manner" and she "certainly wouldn't have gone in for a surgical procedure of that nature without anesthesia." The Bishops have not demonstrated clear error in the court's finding that Kellene requested LPA perform the anesthesia work.

¶8      Next, the Bishops argue that because LPA had a contract with the hospital, LPA did not expect Kellene to compensate LPA and that LPA could not have reasonably expected payment from Kellene unless she had signed a consent form. In other words, the Bishops imply that LPA could not expect compensation without having its own signed contract with Kellene. A contract implied in fact, however, allows "a plaintiff to recover payment for labor performed in a variety of circumstances in which that plaintiff, for some reason, would not be able to sue on an express contract." *Davies v. Olson*, 746 P.2d 264, 268 (Utah Ct. App. 1987). As a result, LPA could expect payment under a contract-implied-in-fact theory even though Kellene did not sign a consent form for LPA. The trial court found that the anesthesiologist expected payment. The Bishops have not shown that this finding is clearly erroneous.

¶9      Finally, the Bishops assert that Kellene believed the cost of the anesthesia services was part of the cost of the services provided by the hospital. But Kellene's misunderstanding actually supports the trial court's finding that Kellene knew that the anesthesiologist expected compensation. Indeed, the Bishops

have not specifically denied their obligation to pay for the anesthesiologist's services. Furthermore, the trial court found that the Bishops recognized their obligation to pay LPA when they made initial payments to LPA and petitioned for relief from payment on the basis of hardship. The Bishops have not shown that the trial court erred in finding that the third element of a contract implied in fact was met.[3] Accordingly, we affirm the trial court's finding that the conduct of Kellene and LPA established a contract implied in fact.[4]

---

3. On appeal, the Bishops attack the trial court's determination that Kellene and LPA had a contract implied in law. Because we affirm the trial court's finding that a contract implied in fact existed, we need not address the trial court's alternative basis for awarding judgment in favor of Outsource. Additionally, we do not address the Bishops' other arguments that no express contract existed and that there was no account stated, because the trial court's ruling did not make determinations to the contrary. *See DeMentas v. Estate of Tallas*, 764 P.2d 628, 634 (Utah Ct. App. 1988) ("An account stated has been defined as an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance." (citation and internal quotation marks omitted)).

4. The Bishops also contest the trial court's calculation of damages, arguing that Outsource did not present any evidence of "the value of the benefit received by [Kellene], as distinguished by the service provided." In announcing its findings, the trial court determined that the undisputed evidence showed the amount LPA charged was the fair value of the services rendered and the benefits conferred. The court further explained there was no testimony to suggest that the amount of

(continued...)

## II. Attorney Fees

¶10　Kellene challenges the trial court's award of attorney fees[5] to Outsource under the statute providing for an award of attorney fees based on a party asserting a cause of action or defense in bad faith.[6] Section 78B-5-825 of the Utah Code

---

the claim was unreasonable. The Bishops have not demonstrated that this finding is clearly erroneous.

5. Kellene argues on appeal that the trial court's findings lacked specificity to support the attorney fee award under the bad faith statute. "To preserve an appellate challenge to the adequacy of the trial court findings, an appellant must first have raised the objection in the trial court with sufficient clarity to alert the trial court to the alleged inadequacy." *Cook v. Cook*, 2013 UT App 57, ¶ 3, 298 P.3d 700 (citing *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801). Although the Bishops objected to the proposed findings of fact and conclusions of law by asserting that "there is no basis for an award of attorney fees to [Outsource]" and that "the court should revise its Ruling, Order, and Judgment accordingly," they did not alert the trial court to the alleged inadequacy of its findings in support of the attorney fee award. Consequently, Kellene has not preserved this argument for appeal. *See id.* ¶ 4 (refusing to consider the merits of an unpreserved challenge to the adequacy of the trial court's findings). But in any event, "we do not require specific factual findings to support an award of attorney fees under [the bad faith statute]." *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 33.

6. Kellene also challenges the attorney fee award on the ground that the family expense statute does not authorize the award of attorney fees when no express contract exists between the parties. *See* Utah Code Ann. § 30-2-9(2) (LexisNexis 2013) ("In an action by a creditor against either husband or wife for the

(continued...)

provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825 (LexisNexis 2012). "In order to award attorney fees under this provision, a trial court must determine *both* that the losing party's action or defense was 'without merit' *and* that it was brought or asserted in bad faith." *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 7, 122 P.3d 556.

¶11    "We review a trial court's grant of attorney fees under [the bad faith statute] as a mixed question of law and fact." *Verdi Energy Group, Inc. v. Nelson*, 2014 UT App 101, ¶ 13, 326 P.3d 104 (alteration in original) (citation and internal quotation marks omitted). "A finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard." *Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct. App. 1991). "The 'without merit' determination is a question of law, and therefore we review it for correctness." *Id.* at 203.

¶12    Kellene contends that because her defense was based in law, it did not lack merit. To demonstrate that a defense to an action is "without merit," "the party seeking an award of attorney fees must do more than assert that the case was unsuccessful." *Verdi Energy Group*, 2014 UT App 101, ¶ 33. "Rather, it must persuade the court that [the defense] 'border[s] on frivolity,' meaning the claims have 'little weight or importance' or have 'no basis in law or fact.'" *Id.* (second

_____

payment of a family expense, the creditor or debtor as the prevailing party shall be entitled to recover reasonable collection costs, interest, and attorney fees as provided in a contract between the creditor and debtor."). Because the trial court awarded attorney fees under the bad faith statute, not the family expense statute, we do not address this argument.

alteration in original) (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)). Put differently, a defense lacks merit when the court determines not only that it was unsuccessful, but that the party asserting it "could not have reasonably believed [it] to have a basis in law and fact." *Id.*

¶13    Although Kellene made legal arguments to the trial court, those legal arguments "'border[ed] on frivolity'" in light of the evidence and Kellene's prior experience with LPA and Outsource. *See id.* (quoting *Cady*, 671 P.2d at 151). The trial court's award of attorney fees was grounded in its finding that the Bishops had been billed by LPA once before in 2008. An Outsource collector testified at trial that it had an account against the Bishops in 2008 for a collection from LPA. She further testified that the 2008 account was closed when Outsource received full payment and satisfied a judgment in December 2009. Given this history, Kellene's defense that she could not be billed separately for the anesthesia services had "'little weight'" and had "'no basis in law or fact.'" *See id.* (quoting *Cady*, 671 P.2d at 151). As a result, the trial court did not err in determining that Kellene's defense lacked merit.

¶14    Kellene also attacks the trial court's finding of bad faith. In particular, she argues that her defense could not have been in bad faith, because there was a lack of evidence that "the circumstances and facts were similar enough [in 2008] that the basis for a judgment would be the same in both cases." For a trial court to conclude that a defense was asserted in bad faith, it must find that the party "'(1) [lacked a]n honest belief in the propriety of the activities in question; (2) . . . inten[ded] to take unconscionable advantage of others; [or] (3) [had] intent to, or knowledge of the fact that the activities in question will . . . hinder, delay or defraud others.'" *Id.* ¶ 30 (alterations and omissions in original) (quoting *Cady*, 671 P.2d at 151). "A finding of bad faith is upheld when 'there is sufficient evidence in the record to support a finding that at least one of these three factors

applies.'" *Blum v. Dahl*, 2012 UT App 198, ¶ 9, 283 P.3d 963 (quoting *Still Standing Stable*, 2005 UT 46, ¶ 13).

¶15    The trial court's determination of Kellene's bad faith was based on its finding that "[t]he testimony that [the Bishops] believed that the anesthesia would be rendered directly by the hospital is belied by evidence of prior services provided by [LPA] and by the prior efforts of [Outsource] in collecting monies owed by [the Bishops] in similar services." Furthermore, the court found that the Bishops "knew that they were obligated to pay the bill, and failed to present evidence of a hospital bill or itemization of services" that might cast doubt on Outsource's claim. These findings support a conclusion that Kellene knew her defense would hinder or delay Outsource's collection efforts. Notably, Kellene brought this simple debt collection case to trial even when she fundamentally did not dispute that she was responsible for paying for the anesthesiologist's services. Under these circumstances, Kellene has not demonstrated that the trial court's finding of bad faith is clearly erroneous. Accordingly, we affirm the court's award of attorney fees under the bad faith statute.

## III. Conclusion

¶16    In summary, the trial court did not err in concluding under a theory of contract implied in fact that the Bishops were obligated to pay for anesthesia services rendered during Kellene's surgery. The trial court also did not err in awarding attorney fees under the bad faith statute. Accordingly, we affirm.

_____